AMERICAN RIVER WATER CO. v. AMSDEN et als.        6   443
                                                   79  350

A river beyond the ebb and flow of the tide may be navigable, when it has sufficient depth and width to float a vessel used in the transportation of freight or passengers; and this has been extended to its capacity to float rafts of lumber.

To go beyond this and declare a stream navigable which can float a log, would be to turn a rule intended for the benefit of the public, into an instrument of serious detriment to individuals, if not of actual private oppression.

The only other instance in which a stream is navigable, is when it is so declared by statute, and when so declared navigable to a certain point, by implication it is declared non-navigable above that point.

APPEAL from the District Court of the Eleventh Judicial District, County of El Dorado.

This was an action brought by the plaintiffs, an incorporated company, to recover $8,000 damages, for injuries done to the plaintiffs' dam, erected across the North Fork of the American River, at a place called Tamaroo Bar, in El Dorado county, by the defendants in floating logs down said stream on or about June 18th, 1855, and thereby injuring said dam.

The defence set up is, that the stream is navigable for the floating of mill-logs at and above the plaintiffs' dam.

On the trial the jury found a special verdict, in which it is found, among other facts, that the plaintiffs' dam was erected for the purpose of diverting the water of the stream for mining purposes.   That it is situated above Brighton and above the ebb and flow of the tide; that the dam was injured to the amount of $1,500 by the defendants floating logs down the stream against the dam; that the river, at the point designated, is of sufficient size to float saw-logs with the help of the ordinary tools and appliances, from the first of January to the first of July; and that it was used for that purpose before the erection of plaintiffs' dam; but that said stream is not, in its natural and ordinary stages of the water, capable of being used for the ordinary purposes of navigation.

The Court gave judgment for defendants.   Plaintiffs moved for a new trial, which was overruled, and plaintiffs appealed.

*Crocker & Robinson* for Appellants.

The dam is above the ebb and flow of the tide, and above the point of navigation fixed by the Legislature.

The first Act respecting navigable streams was passed April 20th, 1850, and declared the American River a navigable stream up to the

mill-dam at the head of Sutter's race, which was about nine miles above Sacramento. Statutes 1850, p. 100.

In 1851 the point was changed to the town of Brighton. Compiled Laws, p. 247.

In 1853 it was again changed to the Lower Ford, which is a few rods above Lisle's Bridge. Comp. Laws, p. 916.

In pursuance of the same policy, the Act to prevent the obstruction of navigable streams, passed April 10th, 1850, was made applicable only to a stream "which has or may become public highway, by being by law declared a navigable stream." Comp. Laws, p. 144.

And this Court, in adjudicating upon these questions, has decided that the State has the absolute right to control, regulate, and improve the navigable waters within its jurisdiction as an attribute of sovereignty, and that the State has the power to destroy the right of navigating a navigable stream. Eldridge v. Crowell, 4 Cal., 80; Gunter v. Geary, 1 Cal., 462.

The American River, at Lisle's Bridge, is a navigable stream by the Act of the Legislature declaring it to be so. Minturn v. Lisle, 4 Cal. Rep., 180.

Streams above the ebb and flow of the tide can have their navigable character determined by statutes, declaring how far they are public highways. 9 Paige, 554; Angell W. C., §§ 537, 541.

The object of such statutes is to ascertain and declare the public right, in cases where it might otherwise have been doubtful or liable to dispute or interruption. 10 S. R., 237.

But should the Court not deem this the correct principle, then we contend that it is not a public highway, because it is not navigable for the ordinary purposes of navigation.

The defendants claim that when a stream is large enough for navigation, it is a public highway by the common law. Conceding that this principle is properly applicable in this State, still we contend that it applies only to such streams as are navigable in their ordinary stages, when uninfluenced by freshets, for the ordinary purposes of navigation, such as boats, rafts, or other water-craft of artificial construction, and does not apply to streams which are capable only of floating loose logs a portion of the year.

The object floated must be some craft of artificial construction; such as is used for the ordinary purposes of navigation.

In Palmer v. Mulligan, 3 Caines, 319, the Hudson, at Stillwater, was held a public highway, because it was navigable for rafts or lumber.

In Shaw v. Crawford, 10 I. R., 237, because the Battenkill had been used for rafting.

In the People v. Platt, 17 I. R., 212, the Saranac was held not a public highway, because it was not navigable, "for boats of any kind," although it had been used for rafting, for a few years, with the consent of the defendant.

In Hooker v. Cummings, 20 I. R., 98, it was held that the term

"public and common navigable river," meant a river "used with boats and small craft.".

In Adams v. Pease, 2 Conn. 483, it is limited to streams, navigated by " vessels, boats, or any water-craft."

In North Carolina, it is held that the stream must afford a " common passage for people in vessels."

See Bullock v. Willson, 2 Porter Ala., 448 ; Wethersfield v Humphreys, 20 Conn., 218 ; Munson v. Hungerford, 6 Barb. S. C. R., 265.

The same principles were reaffirmed in the case of Curtis v. Keesler, 14 Barbour, S. C. R., 511, where the Court further held, that the owner of the dam was entitled to an injunction, to restrain the running of saw-logs over his dam.

*Glover & Hermance* for Respondents.

1. The American river was, at the point where the dam was erected, at the time of the supposed injury, a *public highway by water;* was so by the common law, and the dam was therefore a nuisance.

2. The Court will not violate any established principle, on the ground of mere fancied expediency, in regard to any important interests, especially regardless of other important interests, unless an imperious necessity exists.

On the first point, in Wadsworth, administrator, v. Smith, 2 Fairf. (Maine) R., 280 ; Paris, Ch. Justice of the Supreme Judicial Court, in delivering the opinion of the Court, says : "If, therefore, *Ten Mile Creek* was naturally of sufficient size to float boats or *mill-logs,* the *public* have a *right* to its *full use* for that purpose, unencumbered with *dams,* sluices or tolls, and no man can thus encumber it without the *public permission.*

The American river is a *public highway by water,* because it can be navigated with *mill-logs* six months in the year, as appears by the special verdict. Angell on Water Courses, §§ 535, 536. The People v. Platt, 17 J. R., 212, referred to by the opposing counsel, recognizes the principle contended for by the respondents.

In the Supreme Court of New York, Kent, Chief Justice, recognizes the same doctrine in Palmer v. Mulligan, 3 Caines R., 318.

The appellants cite the statutes of 1850, p. 100 ; 1851, p. 247 ; Comp. Laws, p. 916, ib. 144, all declaring this river to be a public highway, at points *below this dam,* thus leaving the river *at the point* in controversy, the same as at common law, a common or public highway, as is clearly established by all the authorities adduced by both appellants and respondents.

Angell on Water Courses, also cited on the part of the appellants, (section 537) not only recognizes the doctrine before claimed on the part of the respondents, but clearly embraces and fully sustains the case at bar, in the following emphatic language : "If a stream is naturally of sufficient size, to *float boats,* or *mill-logs,* the public have a right to its free use, for those *two* purposes, unencumbered with *dams,* etc.," referring with approbation to 2 Fairf. Maine R., 280, in which the

learned Chief Justice of the Supreme Judicial Court of the State delivers the unanimous opinion of the Court, fully sustaining the doctrine of the text, and also citing 9 Paige, N. Y. Ch. R., before referred to, and Scott v. Wilson, 3 New Hamp. R., 321, where the same principle is approved.

In Shaw et al. v. Crawford, 10 J. R., 237, also cited on the part of the appellants, although not strictly analogous in its facts, fully endorses all the principles contended for on the part of the respondents in the case at bar. In that case it was contended that because the river Battenkill was not embraced in the statute declaring certain rivers and streams, public highways—that therefore the Battenkill was not a public highway; but the Court say : " Though the Battenkill be omitted in the statute, declaring certain rivers and streams public highways, the omission cannot prejudice the right which the public may have acquired by usage. The object of the act was not to release any public right, but to ascertain and declare it in cases where it otherwise may have been doubtful, or liable to dispute or interruption."

" When a river is so far navigable as to be of public use, in the transportation of property, the public claim to such navigation ought to be liberally supported. The free use of waters, which can be made subservient to commerce, has by the general sense of mankind been considered a thing of common right."

Mr. Justice HEYDENFELDT delivered the opinion of the Court Mr. Chief Justice MURRAY and Mr. Justice TERRY concurred.

A river which is not within the ebb and flow of the tides, may be, notwithstanding, a navigable stream in two events; first, when it is of sufficient depth and width to float vessels, boats, or other water-craft used in the transportation of freight or passengers, or both, and this has been extended to its capacity to float rafts of lumber. To go beyond this, and attribute navigable properties to a stream which can only float a log, is carrying the doctrine entirely too far, and is turning a rule which was intended to protect the public, into an instrument of serious detriment to individuals, if not of actual private oppression. The important uses to which the waters of non-navigable streams are constantly applied, would have no security or certainty under such a stretch of construction. Dams for the erection of mills, manufactories, canals, for the purpose of irrigation, supplying mines, or even to subserve navigation itself, would have to give way to the mere claim of the right to float a saw-log, and if a log, why not a plank, or a fishing rod? The idea of navigation certainly never contemplated such a definition or such results.

The other instance in which a stream is navigable, is when it is expressly declared so by statute.

In regard to the river under consideration, the statute declares it to be navigable up to a point which is below the dam of the plaintiffs. Thus by implication it is declared non-navigable above that place.

The judgment is reversed, and the cause remanded.