NEKOOSA-EDWARDS PAPER COMPANY, Appellant, vs. RAILROAD COMMISSION OF WISCONSIN, Respondent.

*November 8, 1929—March 4, 1930.*

42

For the appellant there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *R. B. Graves*.

For the respondent there was a brief by the *Attorney General* and *Suel O. Arnold,* assistant attorney general, and oral argument by *Mr. Arnold*.

The following opinion was filed December 3, 1929:

CROWNHART, J. The evidence before the commission warrants a finding that prior to 1860 logs were floated down this stream for several years. It warrants a finding

that small boats from time to time navigated the stream. It warrants a finding that at the time of the application for the permit the width and depth of water of the stream at the point of the proposed dam, and for a considerable distance above, made it suitable for navigation of canoes and rowboats. It is from fourteen to forty feet wide. It has a watershed of 126 to 150 square miles. By removing obstructions of logs and brush the stream might be navigated by small fishing craft for quite a long distance—ten miles at least. In fact, the stream has been so navigated quite often. For 600 feet above the dam site the stream is forty feet wide with a depth of two feet to two and one-half feet—fairly uniform. The commission ascertained by actual view, and from the evidence adduced, that the stream is navigable in fact. The trial court sustained the finding of the commission, and the evidence fully sustains the findings of the commission and trial court.

The English common law on the subject of navigable streams does not obtain in this country generally, and especially it does not obtain in Wisconsin. By the English common law navigable waters were limited to tide waters. But here the common-law rule extends to waters navigable in fact. 27 Ruling Case Law, pp. 1302–1306; *Olson v. Merrill,* 42 Wis. 203; *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273.

When the first white men came to Wisconsin, the streams of this state which were capable of floating a canoe were used as highways of commerce to carry furs to market and to bring back supplies to the fur traders. Later they became the highways of the early settlers, and still later the highways of a very large commerce in the logging and lumbering industry. What was true of Wisconsin was largely true of all the Northwest Territory.

By the Ordinance of 1787 it was provided that the articles thereof should be considered as "articles of compact between the original states, and the people and states in the said

territory, and forever remain unalterable, unless by common consent." Art. 4 provided:

"The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory, as to the citizens of the United States, and those of any other states that may be admitted into the confederacy, without any tax, impost, or duty therefor."

The term "carrying places" aids in the construction of what were considered "navigable waters." At that time navigation in this territory was principally carried on by canoes and other small water craft. The "voyageurs" would proceed up a stream to the very limit of its availability to float such a craft, whereupon the load and the craft itself would be carried over to another stream and the voyage continued. Such was the method of carrying the commerce across the state by way of the Fox and Wisconsin rivers, the Fox being considered navigable, and navigable in fact as so used nearly to the Wisconsin. Such was the commerce from Lake Superior to the Mississippi by way of the Brule and St. Croix rivers, where the Brule was so navigable to within a mile and a half of Lake St. Croix, although the Brule is a stream of many rapids and along its upper reaches narrowed to but a few feet across and a few inches deep. So it was with other streams. History gives character and meaning to the navigable waters forever made free by the Ordinance of the Northwest Territory. When lumber came in demand in the West, the great forests of this territory, and of Wisconsin in particular, were decimated, and the logs were floated down practically every creek and rivulet in the state. The waters of small creeks were held back by dams in the spring freshets for a head of water to float the logs later on. Thus a great and valuable commerce was carried on, assisted by pike pole and batteau, over and upon the creeks and rivers of the state.

In 1841 the territorial legislature of Wisconsin declared navigable all rivers and streams of the territory which had been meandered by the United States surveys, and forbade the making of any dams therein without legislative permission. Thereafter, by special acts of such legislature, dams were permitted in such streams. Number 9, Territorial Laws 1841.

So, too, from the earliest beginnings of our statehood the people of the state, through their legislature and their courts, recognized and regulated their navigable streams and commerce, and have so recognized and regulated them to the present day. Ch. 34, R. S. 1849.

When the constitution of the state was adopted, by art. IX, sec. 1, the Ordinance of 1787, relating to navigable waters, was carried into the constitution verbatim. From the adoption of the constitution of the state, the legislature was regulating dams on small streams of the state. To illustrate: By the General and Special Laws of 1851 a boom was authorized on the St. Croix river, and dams were authorized across the Peckatonica river, Sugar river, Little Wolf river, Baraboo river, and others. In 1870 a boom was authorized on Big Rib river, and dams were authorized on Big Rib river, Peckatonica river, Red river in Shawano county, and on the Nimakogan and Totogatic streams. In 1868 dams were authorized across Big Rib, Little Wolf, Apple, and Willow rivers; also Bogus creek, Lyndon creek, and Duck creek. Every session of the legislature passed its quota of special acts authorizing dams and booms to aid commerce on the small streams of the state.

The appellant contends that there is a difference between navigable streams and floatable streams. In *Olson v. Merrill,* 42 Wis. 203, many times since cited with approval, this court·set that matter at rest. To quote a paragraph of the syllabus:

"It is the settled law of this state that streams of sufficient capacity to float logs to market are navigable; and it is not

essential to the public easement that this capacity be continuous throughout the year, but it is sufficient that the stream have periods of navigable capacity ordinarily recurring from year to year, and continuing long enough to make it useful as a highway.".

There a dam had been erected on Levis creek, a small stream in Jackson county, without legislative authority. Action was brought to abate the dam and for damages. It was shown that logs had been floated down the stream for a number of years, principally during the spring freshets, by means of men along the banks who used pike poles or hand spikes to keep the logs in the stream. The creek was very crooked and it required a good deal of labor to get the logs down. But the court held the stream navigable in fact, and free for public use as a highway of commerce.

Under our decisions we perceive no distinction between a "navigable" stream and a "floatable" stream, and it has been held that in this country, where the right of the public has been extended to use streams for driving logs, the terms "navigable" and "floatable" are practically synonymous (*Smart v. Aroostook L. Co.* 103 Me. 37, 68 Atl. 527), and such is the situation here. Such a stream is a public highway.

The use of Four Mile creek for floating logs has long since ceased. It is now used only for pleasure, fishing, and boating. But the evidence that it was profitably used prior to 1860 for floating logs to a sawmill at the mouth of the creek was proper to show its navigable capacity. Once shown to be navigable in its natural state, it is presumed to be navigable and "forever free." Being navigable, the public may use it for the public rights incidental thereto of hunting, fishing, or pleasure boating. *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273; *Diana Shooting Club v. Husting,* 156 Wis. 261, 145 N. W. 816. Indeed, courts have recognized, and now more than ever before recognize, the public's interest in pleasure and sports as a

measure of public health. *State ex rel. Hammann v. Levitan,* 200 Wis. 271, 228 N. W. 140. In fact, navigable waters, in contrast with non-navigable waters, is but one way of expressing the idea of public waters, in contrast with private waters. Boating for pleasure is considered navigation as well as boating for pecuniary profit. *State v. Korrer,* 127 Minn. 60, 148 N. W. 617, 1095; L. R. A. 1916 C, p. 139.

Many of the meandered lakes and streams of this state, navigable in law, have ceased to be navigable for pecuniary gain. They are still navigable in law, that is, subject to the use of the public for all the incidents of navigable waters. As population increases, these waters are used by the people for sailing, rowing, canoeing, bathing, fishing, hunting, skating, and other public purposes. While the public right may have originated in the older use or capacity of the waters for navigation, such public right having once accrued, it is not lost by the failure of pecuniary profitable navigation, but resort may be had thereto for any other public purpose. Our state has for many years been extensively engaged in the propagation of fish and the stocking of the waters of the state with fish fry in order that the public may more fully enjoy the sport and recreation of fishing. By reason of the state's enterprise in behalf of the public, the small streams of the state are fishing streams to which the public have a right to resort so long as they do not trespass on the private property along the banks. *Willow River Club v. Wade, supra; Diana Shooting Club v. Husting, supra.*

Four Mile creek, under the decisions, is a navigable stream as a matter of fact, as found by the Railroad Commission, and it is public waters to which the public have a right to resort for fishing and boating or other enjoyment. That ought to be too plain for reasonable controversy.

The appellant makes the further contention that as it owns all the land on both sides of Four Mile creek at the

point where it proposed to build its dam, and all the lands subject to flowage by reason of such dam, by reason of such ownership and its riparian rights incident to such ownership of the land, it has the right to build and maintain such dam without legislative sanction. Such contention is clearly untenable. It is incompatible with the fact that the stream is navigable and public. On such a stream or body of water the riparian owner may not obstruct navigation or the public use of the waters against the consent of the state. The federal government, by its patents, granted to patentees title to the lands subject to the public use. The state holds in trust for the public all such rights incident to such public use. *Milwaukee v. State,* 193 Wis. 423, 214 N. W. 820; *Fox River Paper Co. v. Railroad Comm.* 274 U. S. 651, 47 Sup. Ct. 669. In the latter case the decision of this court in *Fox River Paper Co. v. Railroad Comm.* 189 Wis. 626, 208 N. W. 266, upholding as constitutional the statutes here in question, was affirmed.

The appellant further contends that the Railroad Commission did not have power or jurisdiction to determine the navigability of the stream. The appellant sought a permit from the commission to build a dam across the stream. The right of the commission to issue the permit depended upon the fact as to whether or not the stream was navigable. As a necessary incident of its jurisdiction to grant the permit requested, the commission had jurisdiction to find the fact as to navigability of the stream. The same question was involved in *Baraboo v. Railroad Comm.* 195 Wis. 523, 218 N. W. 819. There the jurisdiction to find the navigability of the stream was assumed by the parties and the court.

Under the facts of the case, it is fundamental that the state has the power of regulation of the use of Four Mile creek, to the end that navigation shall be free to the public, together with such other public uses as usually pertain to

public waters. *State v. Sutherland,* 166 Wis. 511, 166 N. W. 14, and cases there cited.

*By the Court.*—The judgment of the circuit court is affirmed.

The following opinion was filed March 4, 1930:

CROWNHART, J. (*On motion for rehearing.*) The appellant moves for a rehearing and urges that it acquired, prior to 1911, riparian rights by reason of ownership of the lands on both sides of Four Mile creek, where its dam is built, including any flowage by reason thereof. It relies upon the decisions of this court in *A. C. Conn Co. v. Little Suamico L. Mfg. Co.* 74 Wis. 652, 43 N. W. 660, and *McDonald v. Apple River P. Co.* 164 Wis. 450, 160 N. W. 156. The appellant fails to properly interpret those decisions with reference to the general rule as to riparian rights in navigable streams.

Prior to 1911 the legislature of this state, by law, had authorized the erection of dams on streams that had not been meandered or declared navigable under what were known as the "mill dam" acts. The dams in the two cases *supra* were so built. In the *Conn Case* the plaintiff sought to abate the dam as a nuisance. The court fully recognized the right of the public to use the stream to float logs, but held that under the legislation in question, so long as there was no unreasonable obstruction to plaintiff's right of navigation, the dam did not constitute a nuisance.

In the *McDonald Case* the action was to abate a dam used to create power to generate electricity, and for damages caused by the flowage of plaintiff's lands. The court there held that the legislature had authorized the dam, and plaintiff's remedy was for compensation for damages by reason of the taking of his lands for flowage.

Both of these cases recognized the right of the legisla-

ture to regulate the use of streams navigable for the floating of logs. Both recognized the rights of the riparian owner to make any reasonable use of the streams not inconsistent with the public rights therein.

The appellant here contends that its riparian rights were vested property rights, appertaining to the ownership of the lands adjacent to the stream prior to 1911, which the legislature could regulate by the act of 1911. The riparian rights of the property owner, as we have seen, are subject to the public rights in a navigable stream. Until a dam has been lawfully built in a navigable stream there is no vested property right to obstruct navigation by building a dam therein. It is a matter within legislative control as to the extent and manner to which the riparian owner may obstruct a navigable stream, limited, however, by the state and federal constitutions. Even the legislature may not unreasonably restrict navigation in a stream navigable at the time of the adoption of the constitution.

The legislation of 1911 has been upheld both by this court, in *Fox River Paper Co. v. Railroad Comm.* 189 Wis. 626, 208 N. W. 266, and by the United States supreme court, in the same case on appeal,—274 U. S. 651, 47 Sup. Ct. 669, 71 Lawy. Ed. 1279.

*By the Court.*—The motion for rehearing is denied, with $25 costs.