[Civ. No. 12936. Third Dist. Sept. 15, 1971.]

THE PEOPLE ex rel. ROBERT W. BAKER, as District Attorney, etc.,
Plaintiff and Respondent, v.
RAY W. MACK et al., Defendants and Appellants.

## Counsel

L. C. Smith and Richard J. Asvill for Defendants and Appellants.

Robert W. Baker, District Attorney, for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, Jay L. Shavelson, Assistant Attorney General, Jerold A. Krieger, Deputy Attorney General, Lillick, McHose, Wheat, Adams & Charles and R. Frederic Fisher as Amici Curiae for Plaintiff and Respondent.

## OPINION

BRAY, J.*—Defendants appeal from an injunction issued by the Shasta County Superior Court restraining them from interfering with the free use by the public of a portion of Fall River.[1]

### QUESTIONS PRESENTED

1. In California the sole test of navigability of a stream is not whether it is or can be used for commercial purposes.

2. Plaintiff is not estopped to claim navigability of Fall River.

### RECORD

Fall River, in a state of nature, has its sources in the northwesterly part of the Fall River Valley, Shasta County. It flows in a generally southeasterly direction to its junction with Pit River at the town of Fall River Mills. Defendants are the owners of riparian lands bordering the river and have obstructed navigation and fishing by the public on the river by the erection and maintenance of booms, fences and low bridges across the river and by the construction of fences to prevent access to the river.

Plaintiff filed in the Shasta County Superior Court this action against defendants to abate a public nuisance on the ground that defendants were unlawfully preventing persons from boating, fishing and hunting on Fall River. After a nonjury trial the court found that defendants were unlawfully preventing persons from using Fall River for pleasure boating and fishing because of wires and cables placed across the river by defendants, and that Fall River is navigable up to the southerly portion of defendant Zereda Jensen's property. The court then issued an injunction enjoining defendants from interfering in any manner with the free use and enjoyment of Fall River by the public in the described areas riparian to the properties of defendants and ordering defendants to remove all obstructions across Fall River.[2]

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] An excellent amici curiae brief supporting the action of the trial court was filed herein by the nationally known Sierra Club, David Laing and Henry G. Winans, Jr., San Francisco Bay area businessmen who claimed to have been prosecuted and harassed by defendants for using for recreational purposes the portion of Fall River, William Hitchings, San Francisco businessman and Boy Scout leader, and W. C. Trowbridge, a Sonoma County charterer of canoes.

[2] In the complaint Harold and Adah Ritter are defendants. However, during the progress of the litigation, the Ritters conveyed their property to Robert V. and Sunny

**1044**

## 1. The Test of Navigability.

The main issue in the case is whether or not Fall River, in the area of defendants' properties, is in fact or in law a navigable stream. If it is navigable, then a public right of navigation exists and any obstruction of a navigable stream is a public nuisance. (Civ. Code, § 3479.) On the other hand, if it is not navigable, the owners of riparian properties have the right to obstruct the use of the river as they own the stream, banks and bed.

Defendants contend that the test of navigability is whether the stream is susceptible to a useful commercial purpose. The evidence in the instant case shows that Fall River probably does not meet this test although some 50 years past logs were floated down the river. (See 65 C.J.S., Navigable Waters, § 5, pp. 75-76, to the effect that streams that are merely floatable and useful for logging purposes are considered navigable. However, see *American River Water Co.* v. *Amsden* (1856) 6 Cal. 443, 446, holding that a stream which can only float logs is not navigable.[3])

Plaintiffs contend and the court determined that the test of navigability is met if the stream is capable of boating for pleasure.

In addition to considerable testimony proving that the river is capable of use by boating for pleasure and is so used (except when prevented by defendants), court and counsel observed the river from the air and in a 14-foot aluminum flat-bottom boat with a 5 horsepower motor traversed the portion of the river involved herein.

The headwaters or source of water of Fall River are springs located in the Fall River Valley. Several miles downstream from the area in controversy are two dams of Pacific Gas & Electric Company. The area in question extends from the confluence of Fall River and Tule River upstream to Thousand Springs. Fall River is entirely surrounded by private property with the exception of a dedicated right of way, accepted by Shasta County, giving direct access to the river. Three county bridges cross the river.

By reason of a lawsuit maintained some 40 years ago by certain riparian

---

Read subject to a deed of trust in favor of the Ritters. As the Reads were not joined in the action the court expressly did not include the Reads in the injunction.

[3]The trial court did not rule that Fall River is navigable because of the former use of the river for floating logs, although it might well have done so in view of the decisions in other states which show that the tendency is to embrace within the definition of navigability a stream capable of floating logs. (*Curry* v. *Hill* (Okla. 1969) 460 P.2d 933, 935-936; *Rushton* ex rel. *Hoffmaster* v. *Taggart* (1943) 306 Mich. 432 [11 N.W.2d 193, 196]; *Nekoosa-Edwards Paper Co.* v. *Railroad Com.* (1930) 201 Wis. 40 [229 N.W. 631]; *Collins* v. *Gerhardt* (1926) 237 Mich. 38 [211 N.W. 115, 117]; *Diana Shooting Club* v. *Husting* (1914) 156 Wis. 261 [145 N.W. 816, 819]; *Village of Bloomer* v. *Town of Bloomer* (1906) 128 Wis. 297 [107 N.W. 974, 979].)

owners (see Callison v. Mt. Shasta Power Corp., Shasta County Superior Court No. 6375), based on the riparian rights of the parties, Pacific Gas & Electric Company must maintain the level of Fall River downstream from the area in controversy at almost constant level, varying by a maximum of only one foot throughout the year. The decision was affirmed in *Callison* v. *Mt. Shasta Power Corp.* (1932) 123 Cal.App. 247 [11 P.2d 60].

The State Department of Fish and Game have stocked quantities of fish in the river ever since 1932. Measurements offered in evidence show that the river varies in width from 107 feet to 292 feet, and its depth varies from 2.7 feet to 17 feet.

The court's findings that the river is navigable in fact is well supported.

Under the common law the issue of navigability was determined by a decision on whether or not the tide ebbed and flowed in a given portion of a stream or tributary. If it did, the stream was navigable. Because of the difference between rivers in England and those in the United States, this rule was not adopted in this country. The rule generally adopted here was that if waters were navigable in fact, they were navigable in law, and originally navigability was defined as a stream susceptible to the useful commercial purpose of carrying the products of the country. *Wright* v. *Seymour* (1886) 69 Cal. 122 [10 P. 323], seems to indicate that that was the original definition of navigability in California. As will appear hereinafter this is no longer the rule in this state.

1 Waters and Water Rights (Clark Ed.) page 216, indicates that the basic question of navigability is simply the suitability of the particular water for public use and that modern authorities take that position. With our ever-increasing population, its ever-increasing leisure time (witness the four and five day week), and the ever-increasing need for recreational areas (witness the hundreds of camper vehicles carrying people to areas where boating, fishing, swimming and other water sports are available), it is extremely important that the public not be denied use of recreational water by applying the narrow and outmoded interpretation of "navigability."

It hardly needs citation of authorities that the rule is that a navigable stream may be used by the public for boating, swimming, fishing, hunting and all recreational purposes. (*Munninghoff* v. *Wisconsin Conservation Com.* (1949) 255 Wis. 252 [38 N.W.2d 712, 714-716]; *Willow River Club* v. *Wade* (1898) 100 Wis. 421 [76 N.W. 273]; see *Diana Shooting Club* v. *Husting* (1914) 156 Wis. 261 [145 N.W. 816], which pointed out that at common law the rights of hunting and fishing were held to be incident to the right of navigation.)

The modern tendency in several other states, as well as here, to hold for use of the public any stream capable of being used for recreational purposes is well expressed in *Lamprey* v. *State (Metcalf)* (1893) 52 Minn. 181 [53 N.W. 1139, 1143], where the court said: " 'But if, under present conditions of society, bodies of water are used for public uses other than mere commercial navigation, in its ordinary sense, we fail to see why they ought not to be held to be public waters, or navigable waters, if the old nomenclature is preferred. Certainly, we do not see why boating or sailing for pleasure should not be considered navigation, as well as boating for mere pecuniary profit.' " Lamprey points out that there are innumerable waters —lakes and streams—which will never be used for commercial purposes but which have been, or are capable of being used, "for sailing, rowing, fishing, fowling, bathing, skating" and other public purposes, and that it would be a great wrong upon the public for all time to deprive the public of those uses merely because the waters are either not used or not adaptable for commercial purposes. (Cases from other states which cite with approval the test in *Lamprey* v. *State, supra,* include *Coleman* v. *Schaeffer* (1955) 163 Ohio St. 202 [56 Ohio Ops. 214, 126 N.E.2d 444, 446]; *Hillebrand* v. *Knapp* (1937) 65 So. Dak. 414 [274 N.W. 821, 822]; *Roberts* v. *Taylor* (1921) 47 N. Dak. 146 [181 N.W. 622, 625-626]; see *Muench* v. *Public Service Com.* (1952) 261 Wis. 492 [53 N.W.2d 514, 519, 55 N.W.2d 40], wherein a Wisconsin statute now makes a stream navigable in fact which is capable of floating *any* boat, skiff or canoe, of the shallowest draft used for recreational purposes.)

Among other authorities applying the definition of navigability as the capability of the stream being used for recreational purposes are the following: *Diana Shooting Club* v. *Husting, supra,* 145 N.W. 816, 818, where the court held navigable the widening of Rock River in Malzahn's Bay, Wisconsin, which varied seasonably from 8 inches to 2 feet in depth and which sometimes had no water in it. The court pointed out that availability for rowboats made the stream navigable. *Rushton* ex rel. *Hoffmaster* v. *Taggart, supra,* 11 N.W.2d 193, 195, held navigable and open to public use a stream " 'not navigable in the sense of commercial travel by any kind of boat.' " The fact that during periods of high water logs were run with the aid of dams was not the determining factor in the decision.

In *Willow River Club* v. *Wade, supra,* 76 N.W. 273, a small stream was held navigable although except in times of high water it was impossible to get up the stream as far as the main falls in a rowboat without dragging or pushing it on the bottom of the river in numerous shallow places. Here again, the fact that logs were driven down the river upon freshets and by the aid of dams was not a controlling matter.

In *Ne-Bo-Shone Association, Inc.* v. *Hogarth* (W.D.Mich. 1934) 7 F. Supp. 885 (affd. (6th Cir. 1936) 81 F.2d 70) the stream was held navigable although while used for floating logs in freshets and by the aid of dams, it was never used by boats for commercial purposes. Its average depth was 2½ feet and average width was 50 feet.

In *Collins* v. *Gerhardt* (1926) 237 Mich. 38 [211 N.W. 115], a fisherman was held not guilty of a trespass for fishing in the Pine River, a river upon which logs had been floated seasonally.

Canoe and rowboat navigation and log floating were held in *Nekoosa-Edwards Paper Co.* v. *Railroad Com.* (1931) 201 Wis. 40 [228 N.W. 144] (affd. 283 U.S. 787 [75 L.Ed 1415, 51 S.Ct. 352]), to make a stream only 2 to 2½ feet deep navigable.

In *Wilbour* v. *Gallagher* (1969) 77 Wn.2d 306 [462 P.2d 232, 238], the court said, "The law is quite clear that where the level of a navigable body of water fluctuates due to natural causes so that a riparian owner's property is submerged part of the year, the public has the right to use all the waters of the navigable lake or stream whether it be at the high water line, the low water line, or in between."

In *St. Lawrence Shores, Inc.* v. *State* (1969) 60 Misc.2d 74 [302 N.Y.S. 2d 606, 612], a stream which varied from 6 to 8 feet in depth was held navigable because of use by pleasure and sport fishing craft during ice free season.

This brings us to the California authorities.

With the exception of the 1886 case of *Wright* v. *Seymour, supra,* 69 Cal. 122, and *Ford* v. *County of Butte* (1944) 62 Cal.App.2d 638 [145 P.2d 640], an action to quiet title to land beneath the Feather River, in which the court held the portion of that river involved was nonnavigable because it was not included in the Harbors and Navigation Code's list of navigable streams, and *Fall River Valley Irrigation Dist.* v. *Mt. Shasta Power Corp.* (1927) 202 Cal. 56 [259 P. 444, 56 A.L.R. 264], hereinafter discussed, there is no California case repudiating the modern rule that navigability of a stream may exist without its having been used for commercial purposes.

In *Churchill Co.* v. *Kingsbury* (1918) 178 Cal. 554, 558 [174 P. 329], the court pointed out that in California " 'all waters are deemed navigable which are really so.' " (P. 558.) (See *City and County of San Francisco* v. *Main* (1913) 23 Cal.App. 86, 88 [137 P. 281].)

". . . The right of the public to use navigable waters, however, is not

limited to any particular type of craft. Pleasure yachts and fishing boats are used for navigation . . . ." (*Miramar Co.* v. *City of Santa Barbara* (1943) 23 Cal.2d 170, 175 [143 P.2d 1].)

In *Forestier* v. *Johnson* (1912) 164 Cal. 24 [127 P. 156], the court held that members of the public had an absolute right to navigate and hunt in small boats on Fly's Bay, a slough of the Napa River, which consisted primarily of privately held tidelands covered by shallow waters during some parts of the day. The court held the area navigable even though the waters had been used only for hunting and the land was nearly bare at low tide.

*Bohn* v. *Albertson* (1951) 107 Cal.App.2d 738 [238 P.2d 128], flatly held that boating for pleasure is a sufficient test of navigability. The court quoted from *Lamprey* v. *State, supra,* 53 N.W. 1139, several federal and state decisions discussing the issue, pointed out the trial court's finding that the waters involved were used to accommodate skiffs, row boats and in some places larger pleasure craft, and then held the waters to be navigable. Although the decision states that the waters had been used for barges transporting peat at high tide, a reading of the decision makes it clear that that fact was considered of minimal importance and the court was positively holding that the determination of navigability was based almost solely on the waters' use for boating and fishing. As the court stated, "The situation at Frank's Tract *is definitely* within the rule of *Lamprey* v. *State, supra,* 18 L.R.A. 670." (Italics added.) (P. 747.) The fact that at Frank's Tract the tide ebbed and flowed was not applied by the court as a test of navigability, nor was the fact of the proximity to the Frank's Tract of navigable water (the Sacramento River) of any significance. That that fact is not relevant is made clear in *City of Los Angeles* v. *Aitkin* (1935) 10 Cal.App.2d 460 [52 P.2d 585], where the court held Mono Lake to be navigable. (See also Harb. & Nav. Code, § 101, concerning Clear Lake.)

██ Moreover, California has rejected the common law rule that navigability is determined by whether the tide ebbs and flows (as has virtually every jurisdiction in the United States). (*Churchill Co.* v. *Kingsbury, supra,* 178 Cal. 554.)

Several authorities discussing *Bohn* interpret that case as holding that the test of navigability is navigability in fact by any kind of vessel for any kind of commerce or travel. (One authority is 2 Witkin, Summary of Cal. Law (7th ed. 1960) § 306, p. 1128; another is Cal. Pleasure Boating Law (Cont. Ed. Bar) p. 366.)

██ The failure of the Legislature to designate Fall River in the list of navigable waters in Harbors and Navigation Code sections 101-106, is of

no consequence. In *City of Los Angeles* v. *Aitken, supra,* 10 Cal.App.2d 460, the court held Mono Lake navigable although it was not so declared in Harbors and Navigation Code. *Newcomb* v. *City of Newport Beach* (1936) 7 Cal.2d 393 [60 P.2d 825], held Newport Bay a navigable waterway even though at that time it was not so designated in the code. The state acquired sovereignty in all navigable streams in 1850. The Legislature's failure to include a water course within its listing of waterways did not and cannot cede such waterways into private ownership. (See *People* v. *California Fish Co.* (1913) 166 Cal. 576 [138 P. 79].) The state acquired title by its sovereignty upon its creation in 1850. (*Le Roy* v. *Dunkerly* (1880) 54 Cal. 452.)

■ The fact that the County of Shasta and the State Board of Equalization tax the bed of the river is of no significance on the question of the river's navigability.

### 2. No Estoppel.

Defendants contend that by reason of the finding in *Fall River Valley Irrigation Dist.* v. *Mt. Shasta Power Corp., supra,* 202 Cal. 56, plaintiff is estopped to assert that Fall River is in fact navigable. The trial judge, Honorable Thomas M. Montgomery,[4] in his memorandum of opinion answered this contention well. He obtained from the state library the briefs filed in the case and examined them and the pleadings, as well as the reported opinion. ■ He stated: "The actual holding of the *Fall River Valley District* case, a water rights case, is that defendant had vested riparian rights to use the entire ordinary and natural flow; and that plaintiffs' permit to appropriate, which was 'subject to vested rights,' gave it no right to water.

"The criterion to use in determining whether a finding creates collateral estoppel is: Was the finding necessary to the judgment? If it was unnecessary, there is no collateral estoppel (*Albertson* v. *Raboff* (1956) 46 Cal. 2d 375 [295 P.2d 405], Witkin, California Procedure, 'Judgment,' § 65(b)). Applying this criterion to the finding in question, the matter of navigability or nonnavigability has no bearing on riparian rights. (See Hutchins, *The Calif. Law of Water Rights,* published by State of California, Printing Division, 1956, page 218, and cases which are cited.) The finding of nonnavigability was therefore unnecessary to the judgment, and no collateral estoppel is created by the former decision. . . ."

Moreover, neither the People of the State of California nor any of the defendants were parties in that action, nor are any of the defendants in

---

[4] Judge of the Superior Court of Humboldt County, assigned to the Shasta County Superior Court.

privity with the parties to that action. ■ An irrigation district is in no way in privity with the People of the State of California. ■ The district consists merely of lands susceptible to irrigation from a common source and by the same waterworks system. (Wat. Code, § 20700.) ■ Its purpose is to control, distribute, store, treat, purify, recapture and salvage any water within that area. (Wat. Code, § 22078.) ■ Its functions have nothing to do with use of navigable waterways for boating, fishing and recreation.

Even assuming that navigability was properly an issue in that case, it is not relevant to this action, as it dealt with a different area of Fall River than is involved here.

Nor is the question of title to the bed of Fall River relevant. This is not an action by the State of California to quiet title to the bed of a navigable stream. It is an action to abate a public nuisance—the defendants' unlawful obstruction of and the public's right to navigate and fish a navigable stream.

Just as the court held in *Bohn* v. *Albertson, supra,* 107 Cal.App.2d at page 749, the real question here is not of title but whether the public has the right of fishing and navigation.

■ California's sovereignty and jurisdiction over navigable waters and lands underneath them, makes it unnecessary for the federal government, in granting patents to lands riparian to such waters, to reserve such sovereign rights and hence the lack of such reservations in the patents to the lands riparian to the river is irrelevant to the issue of navigability.

The streams of California are a vital recreational resource of the state. ■ The modern determinations of the California courts, as well as those of several of the states, as to the test of navigability can well be restated as follows: members of the public have the right to navigate and to exercise the incidents of navigation in a lawful manner at any point below high water mark on waters of this state which are capable of being navigated by oar or motor-propelled small craft.

The attention of this court has been directed to the recent case of *Utah* v. *United States* (1971) 403 U.S. 9 [29 L.Ed.2d 279, 91 S.Ct. 1775] wherein the Supreme Court in determining the navigability of Salt Lake reiterated the federal test of navigability as the use of the waters " 'as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. . . .' " (P. 281 [29 L.Ed.2d].) ■ However, as pointed out by amici curiae the federal test of navigability involving as it does property title questions, has always been much more restrictive than state tests dealing with navigability for

purposes of the right of public passage. (See *Youngstown Mines Corp.* v. *Prout* (1963) 266 Minn. 450 [124 N.W.2d 328, 341-342]; *State* v. *Bollenbach* (1954) 241 Minn. 103 [63 N.W.2d 278, 287-288].) The federal test of navigation does not preclude a more liberal state test establishing a right of public passage whenever a stream is physically navigable by small craft.

Judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.