No. 83-174

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

THE MONTANA COALITION FOR STREAM ACCESS,
INC., a Montana non-profit corp.,

                Plaintiff and Respondent,

-vs-

LOWELL S. HILDRETH,

                Defendant and Third Party
                Plaintiff and Appellant,

-vs-

THE STATE OF MONTANA, MONTANA DEPARTMENT OF
LANDS, GARETH MOON, COMMISSIONER OF MONTANA
DEPARTMENT OF LANDS; MONTANA DEPARTMENT OF
FISH, WILDLIFE AND PARKS, and JIM W. FLYNN,
DIRECTOR OF MONTANA DEPARTMENT OF FISH,
WILDLIFE AND PARKS,

                Third Party Defendants and
                Respondents.

---

APPEAL FROM:  District Court of the Fifth Judicial District,
             In and for the County of Beaverhead,
             The Honorable Jack D. Shanstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kirwan & Barrett; Peter M. Kirwan argued for
        Hildreth, Bozeman, Montana

    For Respondents:

        Goetz, Madden & Dunn; James H. Goetz argued for
        Mont. Coalition for Stream Access, Bozeman, Montana
        John F. North & Lyle Manley, Dept. of State Lands,
        Helena, Montana
        Stanley Bradshaw, Dept. of Fish, Wildlife & Parks,
        Helena, Montana

    For Amicus Curiae:

        Christine C. Parker, American Farm Bureau, Dillon,
        Montana
        J.H. Morrow for Montana Farm Bureau Federation &
        Wyoming Farm Bureau Federation, Bozeman, Montana
        Daniel C. Murphy for Mont. Stockgrowers & Wool Growers
        Assoc., Helena, Montana
        Vincent J. Kozakiewicz for Nat'l Wildlife Assoc. &
        Mont. Wildlife Assoc., Missoula, Montana
        Michael Coil for Trout Unlimited, Bozeman, Montana
        Albert Stone, University of Montana, Missoula, Montana

---

                Submitted: March 22, 1984

                Decided: June 21, 1984

Filed:  JUN 2 1984

                *Ethel M. Harrison*

---

                Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from a Rule 54(b), M.R.Civ.P., certified partial judgment entered by the District Court of the Fifth Judicial District, Beaverhead County. After trial on the matter of a permanent injunction, the District Court held that the Beaverhead River is navigable for recreational use and that the public has a right of access up to the ordinary high water mark without interference from appellant Hildreth. Hildreth appeals. We affirm.

Lowell S. Hildreth (Hildreth) is a property owner who owns land abutting the Beaverhead River. The river flows for approximately one and one-half miles through his property.

The Montana Coalition for Stream Access, Inc. (Coalition), is a nonprofit Montana corporation dedicated to the promotion of public access to Montana's rivers.

The Beaverhead River originates at the confluence of the Red Rock River and Horse Prairie Creek in Beaverhead County, Montana. It flows in a northeasterly direction from Clark Canyon Dam through the Beaverhead Valley to a point near Twin Bridges, Montana, where it joins the Big Hole River to form the Jefferson River.

The Coalition filed a complaint on April 8, 1981, alleging that the public and members of the Coalition were entitled to float the Beaverhead through Hildreth's property.

The Coalition filed a motion for preliminary injunction on May 8, 1981, stating that Hildreth had installed a fence across the river on the downstream side of a bridge he had built over the river and was preparing to install a cable across the river for the opening day of fishing season. After a hearing, the District Court entered an order for a

preliminary injunction on May 15, 1981, enjoining Hildreth from interfering with members of the public until the case was decided on the merits.

Hildreth filed an answer, demand for jury trial and third-party complaint against the State, the Department of Fish, Wildlife and Parks, the Department of State Lands and their directors. Hildreth counterclaimed against the Coalition based on a theory of inverse condemnation.

After a hearing, the court, on March 21, 1982, granted the Coalition's motion to amend the complaint and request for injunction, struck the jury demand, and severed the trial on the Coalition's complaint from the trial of Hildreth's third-party claim against the State, et al. On the first day of trial, June 23, 1982, the court dismissed Hildreth's counter-claim against the Coalition.

Trial took place June 23 through 25, 1982, with incor-poration of evidence taken at the preliminary injunction hearing on May 15, 1981. Expert engineers also testified on August 9 and September 7, 1982.

On December 7, 1982, the court issued findings of fact and conclusions of law in favor of the Coalition and granted the Coalition a permanent injunction declaring the Beaverhead River subject to public access up to the high water mark as it passes through Hildreth's lands and restraining Hildreth from interfering with floaters, so long as the public stays within the ordinary high water mark.

I

The following issues have been raised on appeal:

1. Whether the public has a right to use the Beaverhead River for recreational purposes.

3

2. Whether determination of ownership of the streambed of the Beaverhead River is necessary to a decision in this case.

3. Whether it was error to deny Hildreth's motion to dismiss.

4. Whether it was error to deny Hildreth a jury trial.

5. Whether the District Court determined title to real property through an injunction.

6. Whether it was error to dismiss Hildreth's counterclaim.

7. Whether it was error to sever the trial of the third-party complaint from the trial of this matter.

8. Whether Hildreth has been deprived of a property right as a result of the District Court's ruling.

9. Whether it was error to adopt the Coalition's findings of fact and conclusions of law virtually verbatim.


II

The first issue is whether the public has the right to use the Beaverhead River for recreational purposes.

The District Court found the Beaverhead River to be navigable for recreational use under the pleasure-boat test and the commercial use test. While we affirm the result, we find it unnecessary and improper to determine a specific test under which to find navigability for recreational use. The pleasure-boat test is a test which has not been adopted in Montana and the commercial use test is a federal test designed to determine navigability for title purposes and not navigability for use. Neither are suitable nor appropriate here.

As we stated in a previous decision, navigability for use is determined by state law, Montana Coalition for Stream Access v. Curran (Mont. 1984), _____ P.2d ___, 41 St.Rep. 906. Article IX, Section 3(3), of the 1972 Montana Constitution provides:

> "All surface, underground, flood, and atmospheric waters within the boundaries of the state are the property of the state for the use of its people and are subject to appropriation for beneficial uses as provided by law."

We have not limited the recreational use of the State's waters by devising a specific test. As we held in Curran, supra, the capability of use of the waters for recreational purposes determines whether the waters can be so used. The Montana Constitution clearly provides that the State owns the waters for the benefit of its people. The Constitution does not limit the waters' use. Consequently, this Court cannot limit their use by inventing some restrictive test.

Under the 1972 Constitution, the only possible limitation of use can be the characteristics of the waters themselves. Therefore, no owner of property adjacent to State-owned waters has the right to control the use of those waters as they flow through his property. The public has the right to use the waters and the bed and banks up to the ordinary high water mark. Curran, supra. Further, as we held in Curran, in case of barriers, the public is allowed to portage around such barriers in the least intrusive manner possible, avoiding damage to the adjacent owner's property and his rights.

In addition, as we stated in Curran, nothing herein contained in this opinion shall be construed as granting the public the right to enter upon or cross over private property

5

to reach the State-owned waters held available for recreational purposes.

## III

The second issue is whether determination of ownership of the streambed of the Beaverhead is necessary to a decision in this case.

Hildreth contends that the District Court erred in failing to state findings of fact and conclusions of law with regard to the Martin patent.

Hildreth maintains that the patent gave his predecessor-in-title, and subsequently himself, title to the bed of the Beaverhead.

We held in Curran, supra, that the question of title to the underlying streambed is immaterial in determining navigability for recreational use of State-owned waters. This holding applies equally to the case now before us.

Further, other jurisdictions have determined recreational use without regard to the question of ownership of the underlying bed. As in the matter now before us

> "Respondents have devoted a substantial portion of their argument on appeal to the matter of title to the stream bed, asserting that a finding of navigability will result in a taking of private land. As in both the Bohn [Bohn v. Albertson (1951), 107 Cal.App.2d at 749, 238 P.2d 128] and Mack [People Ex Rel. Baker v. Mack (1971), 19 Cal.App.3d 1040, 97 Cal.Rptr 448] cases, however, the question of title to the bed of a navigable stream is not raised in this action to determine public use rights, nor is it relevant to the issues herein presented for decision. (People Ex Rel Baker v. Mack supra, 19 Cal.App.3d at p. 1050, 97 Cal.Rptr. 448; Bohn v. Albertson, supra, 107 Cal.App.2d at p. 749, 238 P.2d 128.) The ownership of the bed is not determinative of public navigational rights, nor vice-versa. (Forestier v. Johnson, 164

6

> Cal. 24, 31-32, 39, 127 P. 156; <u>Bohn v.</u>
> <u>Albertson</u>, <u>supra</u>, 107 Cal.App.2d at pp.
> 742-743, 752-753, 238 P.2d 128; <u>Southern</u>
> <u>Idaho F. & G. Ass'n v. Picabo Livestock</u>,
> <u>Inc.</u>, <u>supra</u>, 528 P.2d at p. 1298; <u>Wilbour</u>
> <u>v. Gallagher</u>, 77 Wash.2d 306, 462 P.2d
> 232, 238; 55 Ops.Cal.Atty.Gen., <u>supra</u>, at
> p. 294; 36 Ops.Cal.Atty.Gen. 20, 26.)"
> Hitchings v. Del Rio Woods Recreational
> Park District (1976), 127 Cal.Rptr. 830,
> 55 Cal.App.3d 560.

Since title to the underlying bed is not at issue and is immaterial to the determination of the public's right of use, the District Court did not err in failing to make findings of fact and conclusions of law relative to the ownership of the streambed.

IV

The next two issues are whether Hildreth's motion to dismiss this action and request for a jury trial were properly denied.

Hildreth argues that since this matter was brought originally under the Declaratory Judgments Act, he contends that a declaratory judgment action is inappropriate in this matter and that the District Court erred in not dismissing this matter.

Hildreth further argues that although this action was originally brought as a declaratory judgment action, it was amended to change the claim to one seeking a permanent injunction. Hildreth contends the purpose of this change was to deny him the right to a jury trial to which he would have been entitled under the Declaratory Judgments Act.

The Coalition responds that while the action was first denominated as one for declaratory judgment, it has always been injunctive in nature. In fact, the first major court confrontation between the parties came on May 15, 1981,

7

within a few weeks of filing the complaint, at the hearing for a temporary injunction.

The extensive file and transcripts support the Coalition's argument that the action has always been injunctive in nature.

Hildreth's position on these issues is inconsistent. First he argues that the declaratory judgment action should have been dismissed because it was inappropriate, but he also contends that the court should not have allowed plaintiff to amend its complaint because it deprived him of his right to a jury trial under the Declaratory Judgments Act. He appears to have been demanding a jury trial in an action which he contends should never have been tried.

To begin with, nothing in the Declaratory Judgments Act gives an absolute right to a trial by jury. Sections 27-17-101 through 27-17-405, MCA. It is a recognized general rule of law that the nature of the issues determine the right to a jury trial. If the issues are strictly equitable there has not been nor is there now such a right. As this Court has stated previously, "A judgment will not be reversed to grant the losing party the right to a jury trial when the record discloses nothing for the jury to try." Federal Land Bank of Spokane v. Myhre (1940), 110 Mont. 416, 101 P.2d 1017.

With regard to the matter of the District Court allowing the Coalition to amend its complaint from an action for a declaratory judgment to an injunction action, we find no error. Rule 15, M.R.Civ.P., provides that leave to file an amended complaint should be liberally granted where justice so requires. Since this matter has been clearly injunctive in nature and the issues equitable since inception, the

District Court did not err in allowing the amendment nor was defendant prejudiced by such an act.

V

The next issue is whether the District Court determined title to real property through an injunction.

Hildreth correctly contends that title to real property cannot be determined in an action for an injunction. Davis v. Burton (1952), 126 Mont. 137, 246 P.2d 236. However, here the court did not determine title but rather the right of the public to use the Beaverhead. As we held in Curran, supra, under the Public Trust Doctrine and the 1972 Montana Constitution, any surface waters that are capable of recreational use may be so used by the public without regard to streambed ownership or navigability for nonrecreational purposes. The District Court properly determined use of the Beaverhead, not title; thus, no error.

VI

The sixth issue is whether the District Court erred in dismissing Hildreth's counterclaim for inverse condemnation against the Coalition.

Hildreth's claim for inverse condemnation is based upon the theory that there has been a taking of his land without compensation. Such is not the case. Public use of the waters and the bed and banks of the Beaverhead up to the ordinary high water mark was determined, not title.

In addition, the underlying theory of Hildreth's counterclaim is not founded in law. The legal rule is that a claim for inverse condemnation can lie only against a party which has power of eminent domain. Rauser v. Toston

9

Irrigation District (1977), 172 Mont. 530, 565 P.2d 632. The Coalition has no such power. The counterclaim was properly dismissed.

## VII

The next issue raised by Hildreth is whether the District Court erred in severing the trial of the third-party complaint from the trial of this matter. We hold that it did not.

On February 10, 1982, an order was entered setting trial in this matter for March 17, 1982. The third-party complaint against the Montana Department of Fish, Wildlife and Parks and its Director, Jim W. Flynn, was not filed until March 4, 1982.

The District Court properly granted the motion for severance pursuant to its discretionary authority under Rule 14, M.R.Civ.P., dealing with third-party practice. In a hearing on the motion, the court found that Hildreth's complaint, filed several days before against the third-party defendants, would entail a substantial period of time for pretrial discovery motions and preparation for trial. On the other hand, the Coalition was ready to proceed with trial in the matter. Further, the District Court found that the issues sought to be raised by Hildreth in the third-party complaint were sufficiently different from those issues between Hildreth and the Coalition. We find no abuse of discretion in this ruling and, hence, no error.

10

VIII

The eighth issue is whether Hildreth has been deprived of a property right by the District Court. We hold that he has not.

As discussed previously in this opinion and extensively in Curran, supra, ownership of the streambed is irrelevant to determination of public use of the waters for recreational purposes. Navigability for recreational use is limited, under the Montana Constitution, only by the capabilities of the waters themselves for such use. Hildreth has never owned and does not now own the waters of the Beaverhead River. Under Montana law, the public has the right to use the Beaverhead and its bed and banks up to the ordinary high water mark, with additional, narrowly limited rights to portage around barriers.

IX

The last issue raised by Hildreth is whether it was error for the District Court to use the Coalition's findings of fact and conclusions of law virtually verbatim. We note, however, Hildreth concedes that reliance on the Coalition's findings of fact and conclusions of law is not, in itself, error. We further note that Hildreth does not argue that the findings and conclusions are not supported by the evidence.

Hildreth's claim of error appears to be rooted in the District Court's failure to make findings of fact and conclusions of law with regard to the Martin patent. Once again, Hildreth has confused the issues of navigability for title and navigability for recreational use. No finding with regard to title was necessary. Curran, supra. Further, a District Court ". . . will not be overturned simply because

11

[it] relied upon proposed findings and conclusions submitted by counsel." In re the Marriage of Kowis (Mont. 1983), 658 P.2d 1084, 40 St.Rep. 149. Consequently, we find no error in the District Court's adoption of the Coalition's findings of fact and conclusions of law virtually verbatim.

## X

In summary, we hold the following:

(1)  The Beaverhead River is navigable for recreational purposes and the public has a right to use its bed and banks up to the ordinary high water mark with limited right to portage across private property in order to bypass barriers in the waters.

(2)  Determination of navigability for title is not necessary or proper when the issue is one of navigability for use.

(3)  The public does not have the right to trespass over private property in order to reach the State-owned waters.

(4)  Hildreth's motion to dismiss and his request for a jury trial were properly denied.

(5)  The District Court's ruling did not determine title to real property but rather the right of the public to use the waters for recreational purposes.

(6)  The District Court properly dismissed Hildreth's counterclaim for inverse condemnation and severed the third-party complaint from the trial of this matter.

(7)  The District Court committed no error in its virtual verbatim adoption of the Coalition's findings of fact and conclusions of law under the circumstances of this case.

_____
Chief Justice

12

We concur:

_____

Daniel J. Shea

_____

_____

_____

John C. Sheehy

_____
Justices

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

The affirmation by this Court of the recreational use test in Curran, supra, and in this case, constitutes, in my view, a radical departure from the well-established public policy of the State of Montana. Public and private rights to use of waters have been acknowledged by this Court, and the legislature, since statehood.

Recent sessions of the Montana Legislature have considered proposed solutions to perceived water use conflicts between landowners and recreational users, and there has been public evidence that a reasonable and legal solution could have been achieved within the legislative forum. The legislature has always had priority over this Court in fixing public policy, and I would defer to that authority.

Under previously established law, the defendant Lowell S. Hildreth, would have been entitled to a trial by jury, and I would reverse for that purpose.

_____
Justice

Mr. Justice John Conway Harrison, dissenting.

While I concurred in Curran, supra, fact wise I believe this case should have been heard before a jury and I would reverse the District Court and send it back for trial.

I concur in the last two paragraphs of Justice Gulbrandson's dissent.

_____
Justice

14