[No. 8906.   Department Two.—March 23, 1886.]

## W. S. M. WRIGHT, APPELLANT, v. L. B. SEYMOUR, RESPONDENT.

MEXICAN GRANT — PATENT FROM UNITED STATES — CONSTRUCTION OF — EXTENT OF GRANT. — Upon the confirmation of a Mexican grant, the patent issued by the United States government to the claimant is the only evidence of the extent of the grant, and the terms used in the patent relating to the extent and boundaries of the grant are subject to the same rules of construction as other grants by the government.

ID. — LAND BORDERING ON TIDAL STREAM — GRANTEE TAKES TO HIGH-WATER MARK. — A patent from the United States government for land bordering upon a stream in which the tide ebbs and flows, but which is unnavigable in fact, does not pass the title to any land below high-water mark, unless an intention so to do is expressed therein.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Henley & Oates*, for Appellant.

*Sidney V. Smith & Son*, for Respondent.

SEARLS, C. — This is an action of ejectment to recover a parcel of land situate in the county of Sonoma.

The cause was tried by the court without a jury, written findings filed, and judgment entered in favor of de-

fendant, from which, and from an order denying a new trial, plaintiff appeals.

Plaintiff's claim to the demanded premises is based upon a patent from the United States of America to Stephen Smith, dated April 18, 1859, which shows a grant of the Bodega ranch, lying between Russian River, the Pacific Ocean, and Bodega Bay.

The description contained in the grant, so far as it borders on Russian River, is as follows: "To a stake marked B 185, on the bank of Russian River station 185, thence meandering down the Russian River north 46° 15' west, 19 chains, to station 186, by 49 courses and distances, to the place of beginning."

Plaintiff deraigns title from the original patentee.

The land in controversy, consisting of about forty acres, constitutes an island in Russian River, about one mile from its mouth at the Pacific Ocean.

The main channel of the river runs on the northerly side of the island, and south of it is a slough by which it is separated from the mainland, between which and the island the water is in places very shallow, and according to some of the witnesses, at low tide and in very dry time has been known to entirely disappear near the lower end of the island.

The evidence shows further that the ocean tides flow up the river to a point above the island. The river is not navigable for boats larger than canoes, skiffs, etc., and is not *in fact* a navigable stream for commercial purposes.

The question for determination is, Does the land of plaintiff extend to the thread of the stream, *usque ad filum àquæ*, or is it bounded by a line at high-water mark on Russian River?

If the former, then the channel of the river being on the north side of the island constituting the demanded premises, the land falls within the prior grant, under which plaintiff holds, and he is entitled to recover, while

if under the calls of the grant his boundary only extends to high-water mark, then and in that case the island is without the grant, and the construction placed by the court below upon the patent under which the plaintiff claims is the correct one.

Russian River, at the point in question, is a stream in which the tide ebbs and flows.

At common law, all streams in which the tide ebbed and flowed were navigable streams, and those in which there was no flow and reflow of the tide were innavigable streams.

This rule did not depend upon the navigability or non-navigability *in fact* of a stream, but upon the criterion afforded by the influx and reflux of the tide.

A little reflection will suffice to convince the inquirer of the reasonableness of this rule in the land of its origin.

The streams of England are all, of necessity, springing from the limited extent of the country, short, and owing to the topography of the country and their limited flow of water, are not, *in fact*, as a rule navigable until tide-water is reached.

These facts borne in mind, and the reason of the rule is apparent.

In the sense of the common law, Russian River, at the point indicated, is as completely a navigable stream as the Hudson at New York or the Thames at London.

In case of *Royal Fishery in the River Banne* (Ireland), Davies, 149, it was resolved "that there are two kinds of rivers, navigable and not navigable; that every navigable river, so high as the sea ebbs and flows in it, is a royal river, and belongs to the king, by virtue of his prerogative; but in *every other* river, and in the fishery of such other river, the terre-tenants on each side have an interest of common right, the reason for which is, that so high as the sea ebbs and flows, it participates of the nature of the sea, and is said to be a branch of the sea so far as it flows."

One of the results of this royal prerogative was that a grant of land extending to and bounded by or including a navigable stream within its boundaries did not operate to pass title to the bed of the stream, while a grant from the sovereign of land bordering upon a stream not navigable in the common-law sense—that is, above tidewater—would be presumed to extend to the thread of the stream.

We must not be understood as indicating that at common law the bed of a navigable stream could not be granted to a subject by a sovereign, but only as saying that it did not pass except in those cases where the specific intent to so grant was apparent in the conveyance.

" All rivers above the flow of tide-water are," says Angell on Watercourses, " by the common law, *prima facie* private; but when they are naturally of sufficient depth for valuable *floatage*, the public have an *easement* therein for the purposes of transportation and commercial intercourse; and, in fact, they are *public highways* by water.

" Public watercourses in this last sense are both public and private. They are or may be the objects of private ownership subject to public use." (Angell on Watercourses, sec. 535.)

Such a river is " not a navigable river, however deep and large, in common-law language, being above tidewaters; but one under servitude to the public interest, and over the waters of which the public have a right to pass." (*Spring* v. *Russell*, 7 Greenl. 290.)

Tyler, in his work on Boundaries, after reviewing the authorities, says: " It may, then, be affirmed that it is a settled principle in the laws of this country and of England, that the right of soil of owners of land bounded by the sea, or, which is the same, on navigable rivers where the tide ebbs and flows, extends only to high-water mark, and that the shore below common but not extraordinary high-water mark belongs to the state, as trustee for the public."

In England the crown, and in this country the people, have the absolute proprietory interest in the shore of these waters, though it may by grant or prescription become private property. (3 Kent's Com., 7th ed., 514–515.)

But the grantee of such shore will not take a fixed freehold, but one that shifts as the shore recedes or advances. (*Scratton* v. *Brown,* 4 Barn. & C. 485.) "So that in all cases where the land of a private individual is bounded upon sea, *prima facie* the boundary is the shore at ordinary high-water mark." (Tyler's Law of Boundaries, p. 39.)

"The same principle which governs the question of boundary of property adjoining the sea applies to arms of the sea, estuaries and navigable rivers below tidewater." (Tyler's Law of Boundaries, p. 40; 3 Washburn on Real Property, pp. 633, 634; Angell on Tide Waters, sec. 74; Hale de Mare Juris, cap. 4; *Canal Company* v. *People,* 5 Wend. 443; *Canal Company* v. *Kempshall,* 26 Wend. 414.)

The lands under water where the tide ebbs and flows belong to the state by virtue of her sovereignty, and in the absence of an express showing to the contrary, it will not be presumed that the government of the United States intended to convey it. (*Upham* v. *Hosking,* 62 Cal. 250; *Guy* v. *Hermance,* 5 Cal. 74; *Chapin* v. *Bourne,* 8 Cal. 295; *Teschemacher* v. *Thompson,* 18 Cal. 11; *People* v. *Morrill,* 26 Cal. 353; *Rondell* v. *Fay,* 32 Cal. 364; *Ward* v. *Mulford,* 32 Cal. 372; *More* v. *Massini,* 37 Cal. 432.)

The doctrine of the common law in reference to the rights of riparian proprietors upon streams which are navigable in fact, though not subject to the flow and reflow of the tide, has been modified in some respects in many of the states of the Union. In Pennsylvania, Alabama, Tennessee, and some other states the doctrine is held that in all streams navigable in fact, the riparian proprietor only takes to low-water mark, the soil and

water formed between the lines that described low-water mark being retained as eminent domain for the use of all citizens, and that the right of navigation in all such navigable waters is the paramount public right of every citizen. (*Flanagan* v. *Philadelphia*, 42 Pa. St. 213; *M. B. Co.* v. *Kirk*, 46 Pa. St. 112; *Bullock* v. *Wilson*, 2 Port. 436; *Elder* v. *Burns*, 6 Humph. 356–358.)

We fail, however, to find in any of the United States an adjudged case in which it has been held that a conveyance of land bordering upon a tidal stream, in the absence of an express intention so to do, has been construed to pass title to any land below high-water mark; and the doctrine of sections 830 and 670 of our Civil Code is believed to be but a declaration of the law on this subject as it has existed since the formation of our state government.

Section 830 is in the following language:—

"Except where the grant under which the land is held indicates a different intent, the owner of the upland, when it borders on tide-water, takes to ordinary high-water mark; when it borders upon a navigable lake or stream, where there is no tide, the owner takes to the edge of the lake or stream at low-water mark; when it borders upon any other water the owner takes to the middle of the lake or stream."

Section 670, *supra*, is as follows:—

"The state is the owner of all land below tide-water, and below ordinary high-water mark, bordering upon tide-water within the state; of all land below the water of a navigable lake or stream, etc."

The description in the patent under which plaintiff claims is such as would be sufficient to include the bed of Russian River to the thread of the stream were such a river a private stream, and is not sufficient in law to convey the land in a tide-water stream below high-water mark.

The contention of appellant, that his title is derived

from the government of Mexico, that the patent from the United States government was simply a confirmation of pre-existing rights under the grant, that at the date of the grant the common law did not exist as a rule of action or decision in California, and consequently, that none of the rights of the patentee conferred by the preceding sovereignty can be divested, is substantially correct.

But the question remains, What were those rights?

When we answer this question, in the light of the evidence presented by appellant through the patent of his grantor, we are constrained to say that he has failed to show any right to the land in question. (*More* v. *Massini,* 37 Cal. 435.)

We must assume that the government discharged its obligation to the holder of the Mexican title by receiving proof of its character and the land to which it related, and that upon confirmation the patent issued to the claimant is the evidence and only evidence of the extent of the grant, and the terms used in such patent relating to extent and boundaries are subject to like rules of construction with other grants from the government.

Had the government found the claimant entitled to the bed and banks of a tide-water stream, we must suppose it would have used in the patent apt words for its conveyance. Not having done so, the presumption is, that it was not intended to convey the bed of the stream.

The witness Cox, to whose testimony appellant now takes exception, appears to have been introduced without objection, and the motion afterward made to strike it out cannot avail the appellant. (*People* v. *Long,* 43 Cal. 446.)

We are of opinion the judgment and order appealed from should be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

THE COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.