**Elinor E. PETERSEN, Carol E. Heche, and 51.424 acres of land, more or less, in the City and County of San Francisco, State of California, et al., Appellants,**

**v.**

**UNITED STATES of America and the State of California, Appellees.**

**No. 18667.**

United States Court of Appeals Ninth Circuit.

Jan. 17, 1964.

Rehearing Denied Feb. 25, 1964.

Elinor E. Petersen, in pro. per., and Carol E. Heche, in pro. per., for appellants.

Ramsey Clark, Asst. Atty. Gen., Roger P. Marguis and George R. Hyde, Attys., Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., and J. Harold Weise, Asst. U. S. Atty., San Francisco, Cal., for appellee United States.

Stanley Mosk, Atty. Gen. of California; and Miriam E. Wolff, Deputy Atty. Gen., San Francisco, Cal., for appellee State of California.

Before CHAMBERS, Circuit Judge, MADDEN, Judge of the Court of Claims, and BROWNING, Circuit Judge.

MADDEN, Judge.

The United States brought an eminent domain action to take a certain 51.424 acre tract of land located in the State of California. The United States District Court on February 27, 1956, made an order for the delivery of the possession of the property to the United States. In the instant phase of the eminent domain proceeding, our problem is to determine whether or not the appellants were the owners of the property taken, at the time of the taking. The State of California, on the one hand, and the appellants, on the other, claim such ownership. The appellants made in the District Court, a motion for judgment in their favor, which judgment would have established their ownership and would have entitled them to the just compensation which the United States will be obliged to pay to the one who owned at the time of the taking. The State of California and the United States opposed the appellants' motion. The District Court held the appellants' claims to the land invalid, denied their motion, and dismissed their claims. The appeal before us is from that judgment.

The land in question, at the time of the taking, was covered by the waters of the San Francisco Bay. It lay between the pierhead line of Oakland-Alameda and the boundary line of the City and County of San Francisco, some two miles out in the bay from the Oakland-Alameda line. The United States, after it received possession, filled the land, or much of it, so that its surface was above the surface of the water of the bay.

The appellants trace their asserted ownership to one Don Luis Peralta. He, in 1820, received a grant from the King of Spain, the then sovereign of what later became California, of a tract of land called the Rancho San Antonio. This grant included land adjacent to that part of San Francisco Bay in which the submerged area here in question lies.

The Republic of Mexico succeeded to the Spanish sovereignty of California, and the United States of America, in 1848, by the treaty of Guadalupe Hidalgo,[1] succeeded to the Mexican sovereignty. On September 9, 1850, California was admitted to the Union as one of the United States of America. By the act of March 3, 1851,[2] "An Act to ascertain and settle the private Land Claims in the State of California," Congress provided for a commission to which one who claimed to be an owner of land in California, under Mexican law, could present his

---

1. 9 Stat. 922.

2. 9 Stat. 631.

claim and the evidence of his ownership. If the commission, or a court upon review of the commission's decision, found his claim to be valid, he then received a patent from the United States for the land which the commission found that he owned. The statute provided for an appeal, by a party dissatisfied with the decision of the commission, to the United States District Court, and from that court to the Supreme Court of the United States.

The Act of March 3, 1851, was, in effect, a registration statute under which a new title, certified as valid by the new sovereign, was established for each successful applicant. The patent, issued by the United States, was the title deed from which any subsequent owner had to trace his ownership.

The Supreme Court of the United States, in Botiller v. Dominguez, 130 U.S. 238, 255, 256, 9 S.Ct. 525, 530, 32 L.Ed. 926 said:

" * * * But we are quite satisfied that upon principle, as we have attempted to show, there can be no doubt of the proposition, that no title to land in California, dependent upon Spanish or Mexican grants can be of any validity which has not been submitted to and confirmed by the board provided for that purpose in the act of 1851; or, if rejected by that board, confirmed by the District or Supreme Court of the United States."

In 1852, the four sons of Don Luis Peralta, who was deceased, presented to the commission their claims to Rancho San Antonio. The commission confirmed in one of the sons, Antonio Maria Peralta, a defined part of the original Rancho San Antonio. Appeals were taken to the United States District Court. The proceedings were long drawn out. The boundaries of the tract confirmed to Antonio Maria Peralta, as surveyed, were meticulously described in the record of the proceedings, and in the patent which was ultimately issued to Antonio Peralta in 1874. The appellants trace their asserted title from this patent.

The patent to Antonio Peralta defined the boundary of his land, where it abutted on the water as follows:

"Thence meandering along the shore of the Bay of San Antonio at the line of ordinary high water * * *, and thence meandering along the Bay of San Francisco, at the line of ordinary high tide."

A boundary line at "ordinary high water" or "ordinary high tide" cannot, by any process of interpretation, be located somewhere on or under the surface of the water a mile or more from the line of high tide or high water. As we understand the appellants' contention, it is that the confirmation of the Peralta title which eventuated in the patent to which the appellants trace their title simply confirmed that the Peraltas had, under Mexican law, the ownership of some land which they claimed, but that to determine just what they owned, just where their boundaries were, one should look to the 1820 grant of the King of Spain to Don Luis Peralta. They say that that grant bounded the granted land on the west by the "profundo mar" or deep sea, and that, under Spanish and Mexican law, that language set the boundary at "the deepest waters of the Bay of San Francisco."

Even if the appellants are correct in their contention as to how much submerged land Don Luis Peralta received under his 1820 grant from the King of Spain, the interpretation which the courts have given to the Act of March 3, 1851, would have required the Peraltas to so define their claim in their presentation before the commission in 1852 and thereafter, and to obtain a patent for land so bounded. There is no evidence that they claimed any such boundaries; and in fact, after long litigation, Antonio Peralta accepted the patent which we have described above, and which plainly and unambiguously excluded from its coverage any land covered by the waters of the bay.

The District Court relied upon the case of Wright v. Seymour, 69 Cal. 122, 10 P.

323, among others, as being closely in point. There the question was whether the plaintiff's land extended to the thread of the Russian River, or only to the high water mark. We quote, as did the District Court, the following from the opinion in that case:

"The contention of appellant that his title is derived from the government of Mexico; that the patent from the United States government was simply a confirmation of pre-existing rights under the grant; that at the date of the grant the common law did not exist as a rule of action or decision in California, and consequently that as none of the rights of the patentee conferred by the preceding sovereignty can be divested,—is substantially correct.

"But the question remains, what were those rights?

"When we answer this question, in the light of the evidence presented by appellant through the patent of his grantor, we are constrained to say that he has failed to show any right to the land in question. * * *

"We must assume that the government discharged its obligation to the holder of the Mexican title by receiving proof of its character and the land to which it related; and that, upon confirmation, the patent issued to the claimant is the evidence, and only evidence, of the extent of the grant, and the terms used in such patent relating to extent and boundaries is subject to like rules of construction with other grants from the government.

"Had the government found the claimant entitled to the bed and banks of a tide-water stream we must suppose it would have used apt words for its conveyance. Not having done so, the presumption is that it was not intended to convey the bed of the stream."

We have found the brief of the appellants, who represented themselves in this litigation, interesting and enlightening, although we have not found it necessary to discuss all the points which are raised in the brief. But we have concluded that the District Court reached the correct conclusion, and we affirm the judgment.