[No. C000361. Third Dist. Apr. 26, 1989.]

GOLDEN FEATHER COMMUNITY ASSOCIATION et al.,
Plaintiffs and Appellants, v.
THERMALITO IRRIGATION DISTRICT et al., Defendants and
Respondents.

COUNSEL

Robert L. Hewett for Plaintiffs and Appellants.

Minasian, Minasian, Minasian, Spruance, Baber, Meith & Soares, M. Anthony Soares, Peters, Fuller, Rush, Schooling & Carter and John Jeffrey Carter for Defendants and Respondents.

OPINION

**SPARKS, J.**—In this case we consider whether members of the public may assert the public trust doctrine in order to compel authorized appropriators of water from a nonnavigable stream to continue their diversion of water but forego their use of the diverted water in order to maintain an artificial reservoir for the recreational use of the public. We hold that the public trust doctrine does not apply in these circumstances.

Plaintiffs appeal from a judgment dismissing their action after the trial court sustained a demurrer to their fourth amended complaint. By their action plaintiffs sought to maintain the waters of Concow Reservoir in Butte County at a level "which will answer the concerns of the public concerning health, fishing, wild life, recreational, and aesthetic rights . . . ." Plaintiffs assert that the public trust doctrine, as set forth in

*National Audubon Society* v. *Superior Court* (1983) 33 Cal.3d 419 [189 Cal.Rptr. 346, 658 P.2d 709], and Fish and Game Code section 5943, support their claim that they have stated a cause of action. We disagree and shall affirm the judgment.

FACTS

Since this appeal is from a judgment of dismissal following the sustaining of a demurrer, we must treat as true all the properly pleaded facts in the complaint. (*Concerned Citizens of Costa Mesa, Inc.* v. *32nd Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 936 [231 Cal.Rptr. 748, 727 P.2d 1029].) The plaintiff Golden Feather Community Association is a nonprofit unincorporated association organized to represent and educate residents of the Golden Feather Union School District on matters coming before various public boards and agencies within its area of interest. The individual plaintiffs are owners and residents of property contiguous or in close proximity to the association's area of interest. The defendant irrigation districts are the owners of Concow Dam which impounds the waters of Concow Creek creating a reservoir known as Concow Lake.

Plaintiffs assert that between August 13, 1983, and October 25, 1983, the defendants released not less than 6,000 acre feet of water through the Concow Dam spillway and thereby caused the loss of use of the reservoir for fishing and recreational purposes. In 1984 the defendant again reduced the waters in the reservoir so as to prevent plaintiffs from having access to the reservoir waters for fishing during the open season. Plaintiffs are informed and believe the defendants intend to create a hydroelectric project below the Concow Dam on Concow Creek which will draw down the waters of Concow Reservoir to the point where fishing, wildlife and recreational uses will be destroyed and the plaintiffs will be denied access to the waters of the reservoir for fishing purposes.

Plaintiffs sought to have the court declare that the acts of the defendants are illegal and void and that defendants are the holders of a public trust by which plaintiffs and the public at large have the right to free access to Concow Reservoir and to a minimum pool of water for health, fishing, wildlife, recreational and aesthetic purposes. In short, plaintiffs seek a judicial order which would compel defendants to continue their authorized diversion of waters from Concow Creek, but which would preclude them from using the diverted waters for authorized purposes in order to maintain a recreational reservoir.

In papers submitted by plaintiffs in opposition to a motion to strike their complaint it is shown that the impoundment of Concow Dam is actually

known as Lake Wilenor. The Concow Dam was completed in 1924 and has a primary function of impoundment of water for irrigation purposes. The dam is now jointly owned and operated by the defendants with Table Mountain Irrigation District owning 55 percent and Thermalito Irrigation District the remaining 45 percent. The defendants in fact do plan a hydro-electric facility to be operated with water from the dam.

## DISCUSSION

### I.

### Public Trust Doctrine

We granted rehearing to emphasize that we are concerned in this case with only a narrow and specific issue. Before addressing that issue, it will serve the purpose of clarity to explain what is not involved in this appeal. We do so to avoid any implication that our opinion is intended to reflect upon questions which are not specifically presented by this appeal.

We are not here concerned with the issue which was addressed in *National Audubon Society* v. *Superior Court, supra,* 33 Cal.3d 419. That case involved Mono Lake, a natural, navigable body of water which was clearly governed by public trust principles.[1] It appeared that the public trust purposes in Mono Lake were being harmed by the diversion of nonnavigable tributaries. The California Supreme Court held that the public trust doctrine applies to protect navigable waters from harm by diversion of nonnavigable tributaries. (33 Cal.3d at p. 437.) ■■ In this case the plaintiffs conceded the nonnavigability of the waters involved.[2] Nor do they assert that the diversion of Concow Creek somehow harms public trust purposes in navigable waterways into which the creek may feed. Instead, the plaintiffs seek to assert the public trust to compel continued diversion of the

---

[1] The history of the public trust doctrine is traced in Stevens, *The Public Trust: A Sovereign's Ancient Prerogative Becomes the People's Environmental Right* (1980) 14 U.C. Davis L.Rev. 195; see also Walston, *The Public Trust Doctrine in the Water Rights Context: The Wrong Environmental Remedy* (1982) 22 Santa Clara L.Rev. 63.)

[2] In their letters to the court following publication of our original opinion, the Attorney General's Office and the State Water Resources Control Board point out that a waterway need only be usable for pleasure boating to be considered navigable for purposes of the public trust doctrine (*id.,* at p. 435, fn. 17), and they assert that it is highly unlikely that the reservoir behind Concow Dam is not navigable in this sense. Nevertheless, the question of navigability is a factual question. (*Bohn* v. *Albertson* (1951) 107 Cal.App.2d 738, 742 [238 P.2d 128].) The parties to this litigation agreed that the case does not involve a navigable waterway. Naturally, such a concession binds only the parties to this litigation and those in privity with them. But in resolving the dispute between the parties we are not free to disregard their concessions.

waters of Concow Creek, while precluding use of the diverted waters by the authorized diverters. Whether plaintiffs may assert the public trust doctrine in such a manner is both factually and legally distinct from any issue addressed in the *National Audubon* decision.

In this case we are also not concerned with the natural variation of the level of a navigable waterway, such as was involved in *State of California* v. *Superior Court (Lyon )* (1981) 29 Cal.3d 210 [172 Cal.Rptr. 696, 625 P.2d 239], nor with the artificial variation of the level of a navigable waterway, as was the case in *State of California* v. *Superior Court (Fogerty)* (1981) 29 Cal.3d 240 [172 Cal.Rptr. 713, 625 P.2d 256]. In *Lyon,* the court rejected a claim that the public trust applies only up to the natural, low water mark in nontidal navigable waterways. Land between the natural high and low water marks is subject to private ownership but is impressed with the public trust. (29 Cal.3d at p. 232.) In *Fogerty,* the high court applied the *Lyon* holding to Lake Tahoe. In the *Fogerty* case, however, there was a question as to where the boundary between private and public ownership should be placed since it appeared that a dam built in 1870 had altered the natural level of the lake. The court noted the dam had been in existence for over 100 years, long past the period for the acquisition of prescriptive rights by the state, and that it would be difficult, if not impossible, to reconstruct the last natural level of the lake. Under such circumstances, the court rejected the last natural level as the appropriate division between public and private ownership of the lakebed. (29 Cal.3d at pp. 248-249.) In contrast, the issue here does not involve natural or artificial variations in the level of a navigable waterway. Concow Creek is not, and for purposes of this case must be regarded as never having been, navigable, and the reservoir created by diversion of the waters of Concow Creek is entirely artificial.

This case does not involve an artificial waterway which, through circumstances of its origination and long-continued use and acquiescence, may be considered a natural waterway to which private riparian rights have attached. (See *Chowchilla Farms Inc.* v. *Martin* (1933) 219 Cal. 1, 17-18 [25 P.2d 435].) In the cited case the court held that an artificial waterway, which is tantamount to a substitution for a natural waterway and which the persons interested therein have long treated as a natural waterway, may be treated as a natural waterway in the adjudication of private water rights. Plaintiffs have made no allegations which would support such a theory, and they do not assert usufructory rights to the waters of Concow Creek, either riparian or appropriative. Neither do the plaintiff's assert that they have made substantial expenditures in reliance upon a long-continued diversion to the extent that they may insist on the continued diversion or payment of

damages. (See *Natural Soda Prod. Co.* v. *City of L. A.* (1943) 23 Cal.2d 193, 197 [143 P.2d 12].)

This case does not involve the situation presented in *People* v. *Truckee Lumber Co.* (1897) 116 Cal. 397 [48 P. 374]. There the state sought to enjoin the pollution of the Truckee River by the defendant. The defendant asserted that the river was not navigable and traversed only private land and therefore the state had no interest sufficient to obtain an injunction. The court disagreed. The general right and ownership of wild animals, the most important constituent of which are fish, is in the people of the state. (116 Cal. at p. 399.) The state's right to protect fish is not limited to navigable or otherwise public waters but extends to any waters where fish are habitated or accustomed to resort and through which they have the freedom of passage to and from the public fishing grounds of the state. (*Id.,* at p. 401.) The Truckee River was a virtual fish highway between Lake Tahoe and Pyramid Lake, both navigable waters, and the state had the right to protect the fish in the river even where the river traversed private land. (*Ibid.*) Here plaintiffs do not seek to enjoin a nuisance which is alleged to be harming public fisheries; rather they seek to compel defendants to maintain an artificial body of water so that members of the public may fish in it. The *Truckee Lumber* decision involved the state's right to protect public fish in private waters. It did not hold that the public has the right to take fish from private waters under some "public trust" theory, and in fact recognized otherwise. (*Id.,* at p. 401.)

Finally, we note that in this case the plaintiffs have limited their claim for relief to the public trust doctrine. Consequently, we are not here concerned with any of the other ample constitutional and statutory powers by which the state, the State Water Resources Control Board (referred to as the Water Board), or private citizens may act to control the diversion and use of water. (Cal. Const., art. X, § 2; Wat. Code, § 1200 et seq., especially § 1257.) The interests plaintiffs assert could be addressed through administrative procedures before the Water Board. (*Fullerton* v. *State Water Resources Control Bd.* (1979) 90 Cal.App.3d 590, 603-604 [153 Cal.Rptr. 518].) And courts have concurrent jurisdiction with the Water Board to enforce proscriptions against unreasonable uses and unreasonable methods of diversion of water. (*Environmental Defense Fund, Inc.* v. *East Bay Mun. Utility Dist.* (1980) 26 Cal.3d 183, 198-200 [161 Cal.Rptr. 466, 605 P.2d 1].) However, plaintiffs raise only the public trust doctrine in this instance and our opinion is limited to that claim for relief. Our conclusion that the public trust doctrine does not apply in the manner asserted by plaintiffs should not be taken as an indication that the state otherwise lacks authority to address the concerns of the plaintiffs.

When we have eliminated everything which is not at issue in this case it can be seen that we confront a very narrow issue. Specifically, we must determine whether members of the public may, through a judicial action asserting the public trust doctrine, insist that an authorized diverter of a nonnavigable stream continue the diversion of water but forego the authorized uses thereof in order to maintain an artificial reservoir for the recreational (primarily fishing) use of the public. Plaintiffs insist that they may maintain this action under the reasoning of *National Audubon Society* v. *Superior Court, supra,* 33 Cal.3d 419.

We have previously noted that the issue presented here was not resolved in *National Audubon*. That case involved the diversion of nonnavigable tributaries of a natural, navigable lake, and the court held that the public trust can be applied to protect the navigable waterway from harm due to the diversion of the nonnavigable tributaries. Due to this conclusion the court did not consider whether the public trust doctrine applies for some purposes to nonnavigable waters. (33 Cal.3d at p. 437, fn. 19.) Plaintiffs assert that the public trust doctrine must be extended to all waters within the state, whether or not navigable waters are affected. ■ Defendants counter by arguing that the public trust doctrine is limited to matters impacting navigable waters.[3]

In general, the public trust doctrine posits that "the sovereign owns 'all of its navigable waterways and the lands lying beneath them "as trustee of a public trust for the benefit of the people." ' The State of California acquired title as trustee to such lands and waterways upon its admission to the union . . . ." (*National Audubon, supra,* 33 Cal.3d at p. 434, citations omitted.) The origins of the public trust doctrine are ancient. As the high court noted in *National Audubon,* the doctrine has been recognized in Roman law, the English common law, and Spanish and Mexican law. (*Id.,* at p. 434, and fn. 15.) The United States Supreme Court has said: "For when the Revolution took place the people of each State became themselves sovereign; and in that character held the absolute right to all their navigable waters and the soils under them for their own common use, subject only to the rights since surrendered by the Constitution to the general government." (*Martin et al.* v. *The Lessee of Waddell* (1842) 41 U.S. 367, 410 [10 L.Ed. 997, 1013].) The

---

[3] In fact, the public trust doctrine is not limited to navigable waters and streams which feed them. An alternative basis for finding a public trust is that the water is affected by tidal action. Waters which are subject to tidal influence are subject to the public trust regardless whether they are navigable. (See *Phillips Petroleum Co.* v. *Mississippi* (1988) 484 U.S. 469 [98 L.Ed.2d 877, 108 S.Ct. 791]; *Wright* v. *Seymour* (1886) 69 Cal. 122 [10 P. 323].) However, the tidal influence basis for finding a public trust is inapplicable here. We are here concerned with whether the public trust extends to nonnavigable waters which are not subject to tidal influence.

People of California did not surrender their right to common usage of navigable waters to the state; the state holds land in its sovereign capacity in trust for the public purposes of navigation and fishery, and a public easement and servitude exists for these purposes. (*People* v. *California Fish Co.* (1913) 166 Cal. 576, 584 [138 P. 79].) Any conveyance of trust property to a private individual is necessarily subject to the public trust and the state remains trustee with the duty to supervise the trust. (*Marks* v. *Whitney* (1971) 6 Cal.3d 251, 259 [98 Cal.Rptr. 790, 491 P.2d 374]; see also *National Audubon Society* v. *Superior Court, supra,* 33 Cal.3d at p. 437.)

In *National Audubon,* the Supreme Court considered the relationship between the public trust doctrine and the appropriative water rights system in California. Although each system has the potential of occupying the entire field to the exclusion of the other, the court held the systems must accommodate each other and operate simultaneously. (33 Cal.3d at p. 445.) So construed, the state as sovereign retains continuing supervisory control over its navigable waters and the land beneath those waters, and this precludes anyone from obtaining a vested right to appropriate water in a manner harmful to the interests protected by the trust. (*Ibid.*) The Water Board has the authority to grant appropriative water rights and may do so even though the appropriation does not further or even harms the public trust uses. (*Id.,* at p. 446.) However, in determining whether to grant an appropriative water right the Water Board must consider and protect the public trust purposes whenever feasible. (*Ibid.*) And any appropriative right granted which affects the public trust purposes is not vested but is subject to modification or revocation where necessary to protect the public trust purposes. (*Id.,* at pp. 446-447.) Since the appropriative rights at issue in *National Audubon* had been granted by a Water Board that did not understand it should consider the public trust, and since in the intervening years substantial damage had been done to public trust purposes in Mono Lake, the court held that reconsideration of the appropriative rights in light of the public trust was necessary. (*Ibid.*)

 There is substantial reason to conclude that the public trust doctrine does not extend to nonnavigable streams to the extent they do not affect navigable waters. The public trust doctrine is based upon public access and usage of navigable waters and pursuant to that doctrine the public has an easement and servitude upon such waters. (*People* v. *California Fish Co., supra,* 166 Cal. at p. 584.) But the public has never had common access and usage of nonnavigable streams, and therefore the decisional law has been concerned only with the public trust doctrine as it relates to navigable waterways. (*National Audubon Society* v. *Superior Court, supra,* 33 Cal.3d at pp. 436-437; *Marks* v. *Whitney, supra,* 6 Cal.3d at

pp. 258-259; *Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 416 [62 Cal.Rptr. 401, 432 P2d 3].) That navigability is the measure of the public trust doctrine is indicated in our Constitution, which provides: "No individual, partnership, or corporation, claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this State, shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the Legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this State shall be always attainable for the people thereof." (Cal. Const., art. X, § 4.)

While these authorities indicate that the public trust doctrine does not extend to nonnavigable waterways in the absence of some impact on navigable waters, there is another hurdle to the application of the public trust doctrine in this case. We are concerned here with an artificial, man-made body of water. It is a reservoir created by the defendants' authorized diversion of water for specific purposes. As we have noted, the very essence of the public trust doctrine is that the people's right of common usage of navigable waters for navigation and fishing predates the State's acquisition of title to navigable waters and the soils under them. (*People* v. *California Fish Co., supra,* 166 Cal. at p. 584.) The people did not surrender their right of common usage of navigable waters to the state; upon admission to the union the state acquired title to these properties in trust and subservient to the public rights of navigation and fishery. (*Ibid.*; see also *National Audubon Society* v. *Superior Court, supra,* 33 Cal.3d at p. 434.) The state cannot divest itself of the trust obligation and any conveyance of title of such property to a private person is necessarily subject to the trust. (33 Cal.3d at pp. 434, 437; *Marks* v. *Whitney, supra,* 6 Cal.3d at p. 259.)

No similar "chain of title" argument can be made here. The people had no common rights of navigation and fishery in the Concow reservoir which predated defendants' title (or that of their predecessors in interest) since the reservoir itself did not predate that title. Defendants (or their predecessors) acquired title to the land free of the public trust and only later created a reservoir by obtaining the right to divert water and store it upon the land. While the state has broad constitutional and statutory authority to control diversion of water, and may impose conditions upon authorized diversions (Cal. Const., art. X, § 2; Wat. Code, § 1200 et seq., especially § 1257), we are aware of no authority which holds that the mere fact of diversion operates to convey otherwise private land into the public trust.

In the final analysis the public trust doctrine cannot be divorced from the particular circumstances involved. In short, the circumstances which will

warrant application of the term "public trust" and the consequences of characterizing an interest of the state as a trust interest are not uniform. (*California Trout, Inc.* v. *State Water Resources Control Bd.* (1989) 207 Cal.App.3d 585, 630 [255 Cal.Rptr. 184].) Where it is necessary to protect public trust interests the state may have power over properties which are not themselves within the public trust, but this does not mean that such properties are deemed to be added to the public trust, nor that all incidents of the public trust are applicable to such properties. In all cases, the application of the public trust doctrine depends upon the interest for which protection is sought and the manner in which that interest is to be protected. Decisional authorities have, thus far at least, consistently limited application of the public trust doctrine to circumstances where the interest to be protected is a traditional public trust interest. Where such an interest is involved the courts have held that the state has broad powers to protect those interests, even where otherwise nonpublic trust properties are affected.

Examples of these authorities are the *Truckee Lumber* and *National Audubon* decisions. In *People* v. *Truckee Lumber Co., supra,* 116 Cal. 397, the court found a "public trust fishery interest" sufficient to enable the state to enjoin the pollution of a private stream to protect fish with access to public waters, but that interest did not give the state a property interest in the bed of the stream nor the public the right to fish therein. (116 Cal. at pp. 400-401; see also *California Trout, Inc.* v. *State Water Resources Control Bd., supra,* 207 Cal.App.3d 585, 626-630.) In *National Audubon Society* v. *Superior Court, supra,* the court held that the public trust protects navigable waters from harm caused by diversion of nonnavigable tributaries, and thus regardless whether the public trust extends for any purposes to the nonnavigable streams themselves the right to divert such tributaries could be revoked or modified to protect the navigable lake. (33 Cal.3d at p. 437, fn. 19.) Each of these cases involved the protection of a traditional, recognized public trust interest. In each of these cases, the court held that in order to protect the public trust interests the state has authority over nonnavigable streams to the extent necessary to protect the public trust interests. Neither case purported to add the nonnavigable streams themselves to the public trust. Thus, while "a variety of public trust interest pertain[s] to non-navigable streams which sustain a fishery" (*California Trout, Inc.* v. *State Water Resources Control Bd., supra,* 207 Cal.App.3d 585, 630), the streams themselves are not part of the public trust.

In contrast to existing authorities, the plaintiffs in this case do not seek protection of a recognized public trust interest since they concede the waters at issue are nonnavigable and the reservoir is an artificial body of water.

Moreover, plaintiffs do not seek to enjoin an activity, such as diversion of a stream, which harms a public trust interest. Instead, plaintiffs seek an order which would compel defendants to continue diverting water from a nonnavigable stream but which would preclude them from utilizing the diverted water in order to maintain an artificial reservoir for the recreational benefit of the public. Plaintiffs have not provided, and we have not discovered, authority for applying the public trust doctrine in such a manner. Nor have plaintiffs provided convincing argument that we should extend existing authorities to support their claims in this case. We conclude that the public trust doctrine does not support the relief sought by plaintiffs and they have failed to state a cause of action based upon the public trust.

## II.

### Fish and Game Code Section 5943

We turn to plaintiffs' statutory claim. Fish and Game Code section 5943 provides: "The owner of a dam shall accord to the public for the purpose of fishing, the right of access to the waters impounded by the dam during the open season for the taking of fish in such stream or river, subject to the regulations of the commission." ■ Plaintiffs assert that pursuant to this section they have the right to insist defendants forego the use of the waters impounded by their dam in order to preserve the reservoir at a level plaintiffs regard as sufficient for fishing.

We cannot agree with plaintiffs' construction of Fish and Game Code section 5943. The right of access of the public to fish in the reservoir cannot be denied. (*State of California* v. *San Luis Obispo Sportman's Assn.* (1978) 22 Cal.3d 440, 446-449 [149 Cal.Rptr. 482, 584 P.2d 1088]; see generally, Note, *Public Recreation and Subdivisions on Lakes and Reservoirs in California* (1971) 23 Stan.L.Rev. 811.) But as the high court made clear in the cited case, the right of the public to fish does not take precedence over public purposes which are incompatible with fishing. (22 Cal.3d at p. 447.) Fish and Game Code section 5943 does not exist in a vacuum. It is one of a number of statutory provisions imposing duties upon dam owners to preserve and protect the fish population and to secure public access for fishing. (See, e.g., Fish & G. Code, §§ 5931, 5933, 5938, 5942.) These provisions, however, do not require dam owners to forego their own authorized uses of impounded water in order to enhance the fishing opportunities of the public. Had the Legislature intended such a result it could and would have specifically said so. We conclude that while Fish and Game Code section 5943 gives the public the right of access to impounded water for fishing

purposes, it does not create a fishing priority for the use of impounded waters.[4]

■ For these reasons we agree with the trial court that plaintiffs have failed to state a cause of action in their fourth amended complaint. We also find the entry of a judgment of dismissal to have been proper. Not only did plaintiffs fail to state a cause of action after five attempts, upon sustaining of the demurrer to their fourth amended complaint they elected not to amend again. The judgment of dismissal was therefore correctly entered. (*Gonzales v. State of California* (1977) 68 Cal.App.3d 621, 635 [137 Cal.Rptr. 681].)

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.

---

[4] Members of the public have standing to complain of unauthorized and unreasonable uses or methods of diversion of water which interfere with the right to fish. (See *Environmental Defense Fund, Inc.* v. *East Bay Mun. Utility Dist., supra,* 26 Cal.3d at pp. 198-200.) Plaintiffs have not alleged that defendants have engaged in unauthorized or unreasonable uses of the impounded waters. Instead, they assert that their desire to fish has priority over the defendants' use of the water for any purpose. We do not so read Fish and Game Code section 5943. (*State of California* v. *San Luis Obispo Sportman's Assn., supra,* 22 Cal.3d at p. 447.)