Harvey and Doris **MADISON**, Charles and Elena D'Autremont, and Harrison Saunders, Plaintiffs,

v.

Patrick J. **GRAHAM**, Director, Montana Department of Fish, Wildlife, & Parks; Montana Fish, Wildlife & Parks Commission; and Stan Meyer, David Simpson, Charles Decker, Darlyne Dasher, and Tim Mulligan, Commissioners, Defendants,

Montana Wildlife Federation, Montana Chapter of Trout Unlimited, Fishing Outfitters Association of Montana, and Montana Coalition for Stream Access, Defendant–Intervenors.

No. CV00–18–H–CCL.

United States District Court, D. Montana, Helena Division.

Jan. 4, 2001.

Dale R. Cockrell, Christensen Moore Cockrell Cummings & Axelberg, Kalispell, MT, William P. Pendley, S. Amanda Koehler, Mountain States Legal Foundation, Denver, CO, for plaintiffs.

Robert N. Lane, Helena, MT, Joseph P. Mazurek, Stephen C. Bullock, Office of Montana Attorney General, Helena, MT, John F. Lynch, Helena, MT, for defendants.

James H. Goetz, Richard J. Dolan, Goetz, Gallik, Baldwin & Dolan, Bozeman, MT, for intervenor defendants.

## OPINION AND ORDER

LOVELL, Senior District Judge.

Before the court are the motions to dismiss filed by the State Defendants and the Defendant–Intervenors. These motions came on regularly for hearing on December 13, 2000. The court heard argument by William Perry Pendley for the Plaintiffs, by Stephen C. Bullock for the State Defendants, and by James H. Goetz for the Defendant–Intervenors. The court, having considered the briefs filed by the parties and the arguments made at hearing, is prepared to rule.

Plaintiffs seek by their Complaint to enjoin the State Defendants permanently from enforcing the Montana Stream Access Law with regard to privately owned streambeds and banks underlying the Stillwater and Ruby Rivers and O'Dell Creek, historically non-navigable waters in the State of Montana.[1] Plaintiffs' First Claim asserts that the Stream Access Law violates their 14th Amendment right to substantive due process. In the alternative, Plaintiffs' assert the same due process claim pursuant to 42 U.S.C. § 1983. Plaintiffs' Second Claim asserts that the Stream Access law violates their right to due process because it is void for vagueness.

The court's analysis of these issues starts with their legal history beginning in 1972 when Montana adopted a new Montana Constitution, which some feared could infringe upon rights vested and existing under the prior 1889 Montana Constitution and the substantial body of law decided thereunder.

The 1972 Montana Constitution contained this new and significant provision:

All surface, underground, flood, and atmospheric waters within the boundaries of the state are the property of the state for the use of its people and are subject to appropriation for beneficial uses as provided by law.

Article IX, Section 3(3).

Then, in 1984, the Montana Supreme Court examined a claim of plaintiff Montana Coalition for Stream Access, Inc. against defendant Dennis Curran, who owned private property bordering some six to seven miles of the Dearborn River and who claimed a right to restrict its use. *Montana Coalition for Stream Access v. Curran*, 210 Mont. 38, 682 P.2d 163 (1984). Plaintiff claimed that the Dearborn River is a public way and that the public possesses a right to use the river for recreational uses, up to the high water mark on defendant Curran's private property. Although the Dearborn River had always been considered a navigable river for purposes of federal title analysis, and therefore it was never in doubt that the State of Montana had legal title to the Dearborn's streambed, nevertheless the court proceeded to consider the effect of the new surface water provision of the 1972 Montana Constitution. Relying on the 1972 Montana Constitution and upon the Public Trust Doctrine, the Montana Supreme Court held that "any surface waters that are capable of recreational use may be so used by the public without regard to streambed ownership or navigability for

---

1. *See* Mont.Code Ann. §§ 23–2–301, et seq. (1999). With certain restrictions, the Montana Stream Access law provides that "all surface waters that are capable of recreational use may be so used by the public without regard to the ownership of the land underlying the waters." Mont.Code Ann. § 23–2–302(1).

nonrecreational purposes." *Montana Coalition for Stream Access v. Curran*, 210 Mont. 38, 682 P.2d 163, 171 (1984).

Several months later, the Montana Supreme Court decided *Montana Coalition for Stream Access v. Hildreth*, 211 Mont. 29, 684 P.2d 1088 (1984), in which plaintiff challenged defendant Hildreth's attempt to close 1.5 miles of the Beaverhead River to public use. The district court found for plaintiff and declared that the Beaverhead River was subject to public access up to the high water mark of Hildreth's lands. On appeal, the Montana Supreme Court affirmed the district court, citing *Curran* and the surface water provision of the 1972 Montana Constitution, and declared that the public had a right to recreational use of the streambed and banks of the Beaverhead River up to the ordinary high water mark. *Id.* at 1094.

Next, in 1985, after much political compromise, the Montana Legislature enacted the Stream Access Law, Mont.Code Ann. §§ 23–2–301, et seq., for the purpose of codifying Montana law regarding recreational use of Montana streams. The constitutionality of the Stream Access Law was challenged by several property owners (among them one of the Plaintiffs in the instant case, Harrison Saunders) in *Galt v. State, Dept. of Fish, Wildlife & Parks*, 225 Mont. 142, 731 P.2d 912 (1987) (*"Galt I"*). Although certain minor provisions of the Stream Access Bill were found to be unconstitutional, in the main the Montana Supreme Court found that "the balance of the statutory scheme accords with the Montana Constitution and the opinion of [the] Court." *Id.* at 916. *Galt I* made clear that although property owners might well possess title to the streambeds of streams running through their properties,

such a "fee [is] impressed with a dominant estate in favor of the public." *Id.* The Montana Supreme Court therefore maintained its interpretation of the 1972 Montana Constitution and the Public Trust Doctrine, as earlier stated in *Curran* and *Hildreth*, that the public's right to use state-owned water for recreation imposes a narrowly-confined public easement over the bed and banks of Montana streams owned by private individuals.

Significantly, for purposes of the instant case, the *Galt I* Plaintiffs failed to attempt to appeal this decision to the United States Supreme Court, as they would have done had they desired to challenge the Montana Supreme Court's holding of the constitutionality of the Montana Stream Access Law.

In the instant case, the State Defendants move to dismiss the Plaintiffs' Complaint on the grounds that (1) the Complaint is actually founded in the Takings Clause of the Fifth Amendment, as applied to the states through the 14th Amendment, and this explicit textual source of constitutional authority overrides the claim of substantive due process, (2) under the Fifth Amendment Takings Clause, the test is whether the stream access laws are rationally related to a legitimate state interest and are therefore a valid exercise of police power, (3) even viewed as having a 14th Amendment Substantive Due Process claim, Plaintiffs have failed to carry their burden of showing that there is no conceivable public purpose for Montana's Stream Access laws, and (4) the Montana Stream Access law's failure either to permit or to proscribe portage around natural barriers is not a violation of the vagueness doctrine, and the law's definition of high water mark is not vague.[2] Thus, the State Defendants

---

**2.** Mont.Code Ann. § 23–2–311(4) provides that "[n]othing contained in this part addresses the issue of natural barriers or portage around said barriers, and nothing contained in this part makes such portage lawful or unlawful."

The "ordinary high water mark" is defined at Mont.Code Ann. § 23–2–301(9) as "the line that water impresses on land by covering it for sufficient periods to cause physical char-

acteristics that distinguish the area below the line from the area above it. Characteristics of the area below the line include, when appropriate, but are not limited to deprivation of the soil of substantially all terrestrial vegetation and destruction of its agricultural vegetative value. A flood plain adjacent to surface waters is not considered to lie within the surface waters' high-water marks."

assert that there has been no constitutional violation, and Plaintiffs have failed to state a claim upon which relief can be granted.

The Defendant–Intervenors move to dismiss the Complaint on the grounds that (1) Montana's three-year statute of limitations has elapsed, (2) Plaintiffs' claims are barred by res judicata, (3) the Full Faith and Credit statute requires that the court honor a previous adjudication of the constitutionality of Montana's Stream Access Law, and (4) the Rooker–Feldman Doctrine bars federal district court review of Montana Supreme Court cases.

Taking up the State Defendants' motion to dismiss, the court finds that the State Defendants question whether Plaintiffs have properly framed the issues to be decided and assert that the Complaint's First Claim for Relief is really a Fifth Amendment takings claim. The State Defendants suggest that Plaintiffs seek to avoid framing it thus either because Plaintiffs have failed to exhaust their state remedies or because Plaintiffs cannot meet the applicable Fifth Amendment takings claim standard.

■ Indeed, Ninth Circuit precedent does require that this court view Plaintiffs First Claim as a Fifth Amendment takings claim rather than a 14th Amendment substantive due process claim. *Armendariz v. Penman,* 75 F.3d 1311 (9th Cir.1996) (en banc) (substantive due process claim not actionable when explicit textual protection under takings or just compensation clause of the Fifth Amendment are available, regardless whether a takings claim has merit); *see also Macri v. King County,* 126 F.3d 1125 (9th Cir.1997) (public takings claim); *Sinclair Oil v. County of Santa Barbara,* 96 F.3d 401 (9th Cir.1996) (public takings claim). An as-applied Fifth Amendment takings claim would require exhaustion of state remedies, i.e., presentment and denial, prior to being asserted in federal court. *See Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

■ The applicable test under the Fifth Amendment Takings Clause would require Plaintiffs to show that Montana's Stream Access Law either does not substantially advance legitimate state interests or denies a property owner all economically viable use of his land. *See Nollan v. California Coastal Commission,* 483 U.S. 825, 834, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (citing *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)). Perplexingly enough, Plaintiffs rely heavily on two Fifth Amendment Takings Clause cases, *Nollan* and *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), to support their substantive due process argument. *Nollan* is a classic takings case involving the governmental extraction of a public easement across a private beach, whereas in the instant case we are discussing use of a public water resource in ways not necessarily involving any easement over private land at all. For example, in the case of floaters on Montana streams, there is no public touching of the private streambed but only public use of a public resource. In this example, the private landowner cannot be viewed logically as having any right to exclude a floater from a Montana stream, regardless of the fact that the public water passes over a private streambed. The court acknowledges that not all users of the public resource float on the water, however, but the extent of the touching of the private streambed by a wader, for example, is de minimis and causes no more interference with private property rights than does a floater. Furthermore, the interest and intent of the public is to appropriate and use the surface water, not the private streambed. To the extent that the surface of the water is not subject to appropriation and use by the public, there is no right to the use of the private streambed, since this is an incidental de minimis appurtenance entirely dependent upon use of the surface of the water. These facts are very different from the facts of *Nollan,* where the public desired an easement to walk across a private beach.

Similarly, in *Dolan*, the Supreme Court found that an uncompensated taking had occurred when a shop owner applied for a permit to expand her store and was required, in exchange for the permit, to dedicate a portion of her land for use as a pedestrian path. Because there was no logical relationship between the pedestrian pathway and the expansion of the business, the court applied a heightened scrutiny standard and found that the regulatory action masked an uncompensated taking. *Dolan*, 512 U.S. at 395–96, 114 S.Ct. 2309. Unlike the facts in *Dolan*, however, in the instant case no private property right is being extracted from Plaintiffs in exchange for their receipt of a discretionary benefit. In fact, the public has no interest at all in the private streambed *per se*, but only in the publicly-owned surface waters' that traverse the streambed. The cases cited by Plaintiffs, therefore, being "unconstitutional conditions" cases, are distinguishable from the facts presented by Plaintiffs' Complaint.

Yet the State Defendants argue that Montana does have a legitimate state interest in public recreational use of a public resource such as Montana's streams. The State Defendants point out that the Montana Stream Access Law substantially advances a legitimate state interest and does not cause Plaintiffs to lose all economically viable use of their property. Notwithstanding the State Defendants argument that the Stream Access Law is defensible under the Fifth Amendment, the court is mindful of the fact that a Fifth Amendment Takings Claim is not asserted by Plaintiffs' Complaint and is not before this court.

■ However, even if Plaintiffs correctly frame their First Claim for Relief as a violation of substantive due process, the standard only becomes more demanding. Because Plaintiffs do not assert a fundamental right[3], the statute about which they complain is reviewed under a rational basis standard. *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir.1994). To prevail on this substantive due process claim, Plaintiffs must prove that the statute imposing the property restriction is so irrational and arbitrary that the state could have no conceivable public purpose relating to public health, safety, morals, or general welfare. *Dodd v. Hood River County*, 59 F.3d 852, 864 (9th Cir.1995). In essence, Plaintiffs must show that Montana could have no rational reason for enacting Montana's Stream Access Law. *See Halverson*, 42 F.3d at 1262. It is not even helpful to Plaintiffs if they could show that the law actually fails to advance its alleged purposes; the legislation need only be *intended* by the legislature to advance a public purpose. *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 66 (9th Cir.1994). It is abundantly clear that Plaintiffs cannot show that the Stream Access Law has no public purpose, and in point of fact Plaintiffs have not made any real effort so to do. As counsel for the State Defendants asserted in oral argument, there are numerous, obvious, rational reasons for Montana's Stream Access laws, *viz.*, the public's desire to use Montana's streams for recreation, the promotion of Montana's economy through tourism, and the management of Montana's natural resources and wildlife.

■ Thus, whether viewed as a Fifth Amendment Takings Claim or as a Fourteenth Amendment Substantive Due Process Claim, it is apparent that Plaintiffs have failed to state a claim upon which relief can be granted, for the reason that Montana's Stream Access Law clearly and substantially advances a legitimate government interest and cannot be said to be irrational or arbitrary, certainly not in the sense of being without any conceivable public purpose. It is even doubtful whether the Stream Access Law results in a taking in the first place, given that it relates primarily to public activities on a

---

**3.** Fundamental rights in the substantive due process context are those that pertain to marriage, family, procreation, and the right to bodily integrity. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

public way, i.e., the recreational use of Montana's surface waters.

■ Moreover, as the Defendant–Intervenors caution, there are several reasons why Plaintiffs' Complaint is not properly placed before this federal district court. For example, even if Plaintiffs' claims were meritorious, it appears to the court that Plaintiffs have slept on their rights far too long, having missed the three-year general tort limitations deadline by approximately twelve years. *See* Mont.Code Ann. § 27–2–204(1). As noted by the court during oral argument, Plaintiffs had notice of the potential loss of a property interest upon passage of Article IX, Section 3(3) of the 1972 Montana Constitution. In 1985, the Montana legislature relied largely upon the 1972 Montana Constitution to enact the Stream Access Law, Mont.Code Ann. § 23–2–301, et seq. Plaintiffs allowed these two major legal events to pass without challenge, and may not now be heard to complain decades after the fact. Moreover, the statute of limitations bar applies whether Plaintiffs are permitted to go forward with a direct substantive due process claim or the alternative section 1983 action. *Ward v. Caulk,* 650 F.2d 1144 (9th Cir.1981).

Likewise, the Plaintiffs' argument in favor of a continuing violation exception is without merit. The Plaintiffs allege that passage of the 1985 Stream Access Law violated their constitutional rights, and although Plaintiffs may continue to suffer ill effects from the passage of that law, the legislature has not tolled the statute of limitations by continuing acts. *Id.* at 1147; *see also County Estates Homeowners Association, Inc. v. McMillan,* 276 Mont. 100, 915 P.2d 806, 808 (1996); *see also*

*Kuhnle Brothers, Inc. v. County of Geauga,* 103 F.3d 516 (6th Cir.1997) (continuing violation exception applied to liberty claims not property claims).[4]

It is not unfair that Plaintiffs should be precluded from seeking full adjudication of the merits of the Stream Access Law, not only because they have waited overly long, but also because a full adjudication has already been performed by a competent court having proper jurisdiction. Thus, Defendant–Intervenors assert the bar of res judicata based upon the Montana Supreme Court's decision in *Galt v. State, Dept. of Fish, Wildlife & Parks,* 225 Mont. 142, 731 P.2d 912 (1987) (*Galt I* ).

■ In *Galt I,* a similar group of landowners (including one of the Plaintiffs, Harrison Saunders) did challenge the 1985 Montana Stream Access Law. Their challenge was described by the Montana Supreme Court as follows: The *Galt I* plaintiffs challenged the Montana Stream Access Law "as a taking of private property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, § 29 of the Montana Constitution." *Galt v. State, Dept. of Fish, Wildlife & Parks,* 230 Mont. 327, 749 P.2d 1089, 1090 (1988) ("*Galt II* ") (attorney fees phase of *Galt I* ). Clearly, the *Galt I* plaintiffs sought an adjudication of their federal constitutional rights as well as their rights under the Montana Constitution. No *England* reservation[5] was made by the *Galt I* plaintiffs, and therefore Plaintiff Harrison Saunders is barred by res judicata. Plaintiffs Madisons and D'Autremonts are barred by res judicata through the Full Faith and Credit Statute[6] under the theory of virtual represen-

---

4. Plaintiffs are uncertain about whether they believe that the right to exclude others is a liberty/privacy interest or a property interest. This question has been answered on numerous occasions, however, by the United States Supreme Court, as in *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 433, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), which holds that the right to exclude others is 'one of the most essential sticks in the bundle of

rights that are commmonly characterized as property.'

5. *See England v. Louisiana State Bd. Of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

6. 28 U.S.C. § 1738 provides in part that "[s]uch Acts, records and judicial proceedings or copies thereof, so authenticated, shall have

tation. *See Los Angeles Branch NAACP v. Los Angeles Unified School Dist.,* 750 F.2d 731 (9th Cir.1984) (en banc); *see also Aetna Life & Cas. Ins. Co. v. Johnson,* 207 Mont. 409, 673 P.2d 1277 (1984).

■ Even if this court were not to apply the *res judicata* bar or the statute of limitations bar to Plaintiffs' Complaint, the Plaintiffs would still be precluded from asserting their claims by the Rooker–Feldman Doctrine. By this argument, Defendant–Intervenors assert that Plaintiffs may not seek federal appellate review of the *Galt I* decision in this federal district court. "The Rooker–Feldman doctrine provides that 'federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3rd Cir.1996) (quoting *Blake v. Papadakos,* 953 F.2d 68, 71 (3rd Cir.1992) (internal citation omitted)). The essence of the Rooker–Feldman doctrine is that federal district courts must not conduct appellate review of a state court decision. The proper federal review of the *Galt I* case could have been performed by the United States Supreme Court, but the *Galt I* plaintiffs did not appeal the Montana Supreme Court's decision. While the *Galt I* decision lacks specificity in its reasoning as to the federal and state constitutional claims, "a paucity of explicit analysis in the court's opinion will not strip the holding of its validity for purposes of Rooker–Feldman's jurisdictional bar." *Gulla v. North Strabane Township,* 146 F.3d 168, 172 (3rd Cir. 1998).[7] After reviewing the major federal and state constitutional challenges to the Stream Access Law, the *Galt I* court found the Law to be constitutional, except for a few provisions. This federal district court cannot now undertake a review of that decision, and adjudication of Plaintiffs' Complaint would effectively require this court to do just that.

The federal Rooker–Feldman doctrine deprives this court of jurisdiction over the Plaintiffs' First Claim for Relief (or alternate First Claim), but even if that were not the case, the First Claim for Relief is barred by the statute of limitations and res judicata.

■ Plaintiffs' Second Claim for Relief fares no better. On its face, Plaintiffs' Second Claim fails to point to a statute that "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. . . ." *Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Plaintiffs complain instead that the Stream Access Law fails to state whether or not recreationalists are to be allowed to portage around natural barriers. *See* Mont.Code Ann. § 23–2–311(4). First, this is not a proper constitutional challenge on vagueness grounds because Plaintiffs are really complaining about the legislature's failure to enact a law, and, second, Plaintiffs have failed to allege in their complaint that there are any natural barriers within their streambeds that cause recreationalists to portage beyond the ordinary high water mark.[8] Nor

---

the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." The preclusive effect of a state court judgment is determined by examination of the rendering state's laws. *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244 (9th Cir.1992).

**7.** In fact, the decision in *Galt I* is similar to that of the lower court in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462,

103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), in that an overarching decision implicitly denies all of the plaintiffs' claims.

**8.** The court rejects Plaintiffs' attempt to assert facts not in the complaint by affidavit in response to the State's motion to dismiss. However, I pointed out during argument that nothing in the Stream Access Law authorizes floaters to trespass on adjacent lands beyond the high water mark, in the absence of natural barriers in the stream. The State's counsel agreed with the court's observation and remarked that the remedies of the trespass

does Plaintiffs' complaint that "ordinary high water mark" is ill-defined persuade the court that the statute is vague. *See* Mont.Code Ann. § 23–2–301(9). The definition is reasonably precise and easily understood.

Accordingly, for all of the reasons described above,

IT IS HEREBY ORDERED that the State Defendant's Motion to Dismiss is GRANTED.

IT IS FURTHER ORDERED that the Defendant–Intervenors' Motion to Dismiss is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Complaint is DISMISSED with prejudice. Let judgment enter.

The Clerk is directed to notify the parties forthwith of entry of this order.

laws were available to Plaintiffs to prevent the claimed wrongs.