No. 00-395

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 128N

ROBERT L. RYAN,

Plaintiff and Appellant,

v.

HARRISON & HARRISON

FARMS L.L.L.P., a Georgia Limited

Liability Limited Partnership,

Defendant and Respondent.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Powell,

The Honorable Ted Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert L. Ryan, Helena, Montana (*pro se*)

For Respondent:

John E. Bloomquist, Patti L. Rowland, Doney, Crowley, Bloomquist & Uda, Helena, Montana

Submitted on Briefs: August 31, 2000
Decided: July 24, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Robert L. Ryan filed a Complaint for Declaratory Relief to gain access to a man-made lake located on the property of Harrison & Harrison Farms L.L.L.P. (Harrison). The District Court for the Third Judicial District, Powell County, granted summary judgment in favor of Harrison. Ryan appeals *pro se*. We affirm.

¶3 We address the following issues on appeal:

¶4 1. Whether the District Court erred in concluding that under Montana's recreational use statutes and stream access cases, Ryan does not have a right to enter and cross private property to use the water in Lois Lake for recreational purposes.

¶5 2. Whether the District Court erred in concluding that Ryan can only obtain access to Lois Lake by crossing private property belonging to Harrison.

¶6 3. Whether the District Court erred by deciding the matter without reaching the merits of Ryan's constitutional challenge.

**Factual and Procedural Background**

¶7 Lois Lake was created in approximately 1966 when Harrison's predecessor in interest, Robert Lea, constructed an earthen dam on private property owned by Lea to impede the flow of Snowshoe Creek. The dam that created Lois Lake was originally constructed to facilitate the irrigation of agricultural lands owned by Lea. After the creation of the lake, Lea and his successors used the water stored behind the dam for irrigation and watering

stock. They allowed members of the public to fish the lake on a limited, permission-only basis. In the same way, Ryan had previously sought and received permission to fish Lois Lake. However, at some point, Harrison's immediate predecessor, Roman Loppacher, denied Ryan permission to access the lake. This action followed.

¶8 On February 9, 1999, Ryan filed his Complaint for Declaratory Relief in the First Judicial District Court, Lewis and Clark County. Loppacher filed his Answer and Counterclaim on March 29, 1999, alleging trespass. Loppacher also moved for a change of venue to Powell County since that is where the real property at issue in this action is located. Ryan did not oppose the motion. The First Judicial District Court granted the motion and the case was transferred to the Third Judicial District Court.

¶9 On May 7, 1999, Ryan moved to amend his complaint to enjoin Linda Loppacher as a defendant since the property in question was jointly owned by Roman and Linda Loppacher. The District Court granted Ryan's motion and Ryan duly filed his amended complaint on May 25, 1999.

¶10 Harrison purchased the property from the Loppachers on June 30, 1999. Thereafter, the Loppachers filed a motion to substitute Harrison as the defendant in this action. Said motion for substitution was subsequently granted by the District Court.

¶11 On December 9, 1999, Harrison filed a Motion for Summary Judgment, along with a detailed set of supporting exhibits. Ryan filed his response to that motion on January 18, 2000. The following day, Ryan filed a motion seeking leave of the court to file a second amended complaint to add the Attorney General of the State of Montana as a party to this matter. Harrison filed a brief in opposition to Ryan's motion and on February 28, 2000, the District Court issued an order denying Ryan's request to file a second amended complaint.

¶12 In its order, the District Court determined that Harrison would be prejudiced by the filing of a second amended complaint at this late stage of the litigation and that amending the complaint at this time would interfere with the revised motions and trial schedule which had already been established by the court. The District Court also determined that the defect Ryan intended to cure by amending the complaint--to properly name and serve the Attorney General on constitutional challenges to certain provisions of Montana law-- was raised in Harrison's Answer and Counterclaim filed some eight months prior.

¶13 The District Court held a hearing on Harrison's motion for summary judgment on

March 9, 2000. Ryan and Harrison both appeared with counsel and presented oral argument. On April 3, 2000, the court issued its opinion and order wherein the court granted Harrison's motion for summary judgment. The court concluded that the uncontested record and maps reflect that Lois Lake is located entirely on private property now owned by Harrison; that Ryan can only obtain access to Lois Lake by crossing private property belonging to Harrison; that the public has no right to enter or trespass across private property in order to use water for recreational purposes; that Harrison was entitled to judgment as a matter of law; and that Harrison was entitled to an injunction enjoining Ryan from committing further trespass upon Harrison's property.

¶14 On April 10, 2000, the District Court issued an order approving the withdrawal of Ryan's attorney of record. Thereafter, Ryan, acting *pro se*, filed a Motion for Request to Reconsider Summary Judgment. Harrison filed its response objecting to Ryan's motion. However, before the District Court could rule on the motion, Ryan filed a Notice of Appeal from the court's order on summary judgment, to which Ryan attached a notice to the Office of the Attorney General informing that office of the existence of a constitutional challenge to the language of Title 23, chapter 2, part 3, excluding lakes from the Montana Stream Access Law (MSAL).

## Standard of Review

¶15 Our standard of review in appeals from summary judgment rulings is *de novo*. *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21 (citing *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Oliver*, ¶ 21 (citing *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903). We set forth our inquiry in *Bruner* as follows:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Oliver*, ¶ 21 (quoting *Bruner*, 272 Mont. at 264-65, 900 P.2d at 903).

¶16 Moreover, in a summary judgment proceeding, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences will be drawn therefrom in favor of the party opposing summary judgment. *Oliver*, ¶ 22 (citing *Joyce v. Garnaas*, 1999 MT 170, ¶ 8, 295 Mont. 198, ¶ 8, 983 P.2d 369, ¶ 8). Consequently, we will view the evidence in the light most favorable to Ryan and all reasonable inferences will be drawn in his favor.

## Issue 1.

¶17 *Whether the District Court erred in concluding that under Montana's recreational use statutes and stream access cases, Ryan does not have a right to enter and cross private property to use the water in Lois Lake for recreational purposes.*

¶18 Section 23-2-310, MCA, expressly excludes lakes from the MSAL. Ryan contends that this exclusion deprives the public of access to lakes such as Lois Lake and that under Montana's case law, Lois Lake is navigable as a free-flowing Class II stream, and as such the public has a right to use the lake for recreational purposes. Harrison argues on the other hand that Montana law regarding the recreational use of streams does not apply to the facts of this case because Lois Lake is a man-made lake consisting of diverted or impounded water situated on and surrounded entirely by private property, and that Ryan has no right to trespass or cross private property to use the waters of Lois Lake for recreational purposes.

¶19 In *Montana Coalition for Stream Access, Inc. v. Curran* (1984), 210 Mont. 38, 53, 682 P.2d 163, 171, we determined that

> under the public trust doctrine and the 1972 Montana Constitution, any surface waters that are capable of recreational use may be so used by the public without regard to streambed ownership or navigability for nonrecreational purposes.

Consequently, we held in *Curran* that the public has a right to use the state-owned waters to the point of the high water mark except to the extent of barriers in the waters. In case of barriers, the public is allowed to portage around such barriers in the least intrusive way possible, avoiding damage to the private property holder's rights.

*Curran, 210 Mont. at 55, 682 P.2d at 172. However, we added a cautionary note to our holding in Curran to the effect that*

> nothing herein contained in this opinion shall be construed as granting the public the right to enter upon or cross over private property to reach the State-owned waters hereby held available for recreational purposes.

*Curran, 210 Mont. at 55, 682 P.2d at 172. See also Montana Coalition for Stream Access, Inc. v. Hildreth (1984), 211 Mont. 29, 684 P.2d 1088, overruled on other grounds by Gray v. City of Billings (1984), 213 Mont. 6, 689 P.2d 268.*

¶20 Based on our decisions in *Curran* and *Hildreth*, the 1985 Montana Legislature enacted Title 23, chapter 2, part 3 of the Montana Code Annotated, regarding the recreational use of streams. Section 23-2-302(4), MCA, provides:

> The right of the public to make recreational use of surface waters *does not grant any easement or right to the public to enter onto or cross private property in order to use such waters for recreational purposes.* [Emphasis added.]

¶21 Furthermore, under § 23-2-301(12), MCA, the statute defining "surface water," the Legislature specifically limited the public's recreational use to "natural" water bodies. It is uncontroverted that Lois Lake is a man-made, artificial lake, created in 1966 by a dam constructed entirely on private property and used for watering stock and for irrigation purposes.

¶22 Accordingly, we hold that based on § 23-2-302, MCA, and this Court's holdings in *Curran* and *Hildreth*, the District Court was correct in concluding that Ryan does not have a right to enter and cross private property to use the water in Lois Lake for recreational purposes. Therefore, we affirm the District Court on this issue.

## Issue 2.

¶23 *Whether the District Court erred in concluding that Ryan can only obtain access to Lois Lake by crossing private property belonging to Harrison.*

¶24 Harrison moved for summary judgment on the grounds that under the law and the undisputed facts of this case, Ryan's means of access to Lois Lake constituted a trespass on private property. The District Court agreed and concluded that the uncontested record

and maps reflect that Lois Lake is located entirely on private property now owned by Harrison; that Ryan can only obtain access to Lois Lake by crossing private property belonging to Harrison; and that Harrison was entitled to an injunction enjoining Ryan from committing further trespass upon Harrison's property.

¶25 Ryan argues in his brief on appeal that the District Court erred when it determined that access to Lois Lake could only be made by trespassing on private property because Harrison's proof that the lake is on private property is hearsay. However, contrary to Ryan's assumption, hearsay is testimony that is given by a witness who relates not what he or she knows personally, but what others have said and is therefore dependent on the credibility of someone other than the witness. *Black's Law Dictionary* 726 (7th ed. 1999). In this case, Harrison offered, among other things, affidavits from prior owners of the property attesting to their personal knowledge of the ownership of the property in question.

¶26 Specifically, Harrison offered the following evidence in support of its motion for summary judgment: a chain of title for the property including all recorded deeds up to the present; an aerial photo from the U.S. Department of Agriculture showing Harrison's property including Lois Lake; an affidavit from Zane Pilgeram (who owned the property from 1969 until 1986 when he sold it to Harold Mildenberger) attesting to the fact that during the time he owned the property, there was no question that Lois Lake was a private lake located on private land; an affidavit from Mildenberger (who owned the property from 1986 until he sold it to the Loppachers in 1991) attesting to the fact that the lake was man-made and that it is situated entirely on private property; and excerpts from Roman Loppacher's deposition attesting to his understanding from the real estate agent that sold him the property in 1991 that Lois Lake is a private lake.

¶27 Nevertheless, Ryan maintains that Lois Lake can be accessed, without crossing private property, in three ways: (1) from public property in the south by traveling north to the dam and portaging the dam; (2) from the north by traveling down Snowshoe Creek Road, which Ryan contends is a county road; and (3) from the Snowshoe Creek Road right-of-way into the high water mark of the lake at the southeast end of the lake by the spillway or overflow into the lake. Ryan also claims that this case is not appropriate for summary judgment disposition because the following issues of material fact still need to be resolved: (1) whether the public has the right to recreational use of the waters of Lois Lake; (2) whether Harrison or the State owns the waters of Lois Lake; and (3) whether Snowshoe Creek and Lois Lake qualify as Class II streams. Contrary to Ryan's assertions, however, these are questions of law, not fact, and are appropriate for disposition by

summary judgment.

¶28 Harrison provides ample evidence to dispute Ryan's claim that Ryan can access Lois Lake without crossing Harrison's property. In particular, Harrison points out that Snowshoe Creek Road is not a county road as Ryan claims, but is, in fact, a private road running through Harrison's property. In support of its contention regarding the road, Harrison provided the following evidence.

¶29 First, Harrison provided an affidavit from former owner Pilgeram attesting to the fact that when Pilgeram purchased the property, Snowshoe Creek Road was a private road from the old "Jackson Place" south of his property to the Forest Service boundary north of his property. Pilgeram described the road as 20 feet wide from the Jackson Place to the dam at Lois Lake and that past the dam, there was only a trail extending to the Forest Service boundary. Pilgeram also attested to the fact that the county maintained the road up to the Jackson Place in the summer and that the forest service occasionally maintained the road north of the Jackson Place, but that there was no winter maintenance on the road. Pilgeram stated that, during the time he owned the property, there was no question that Snowshoe Creek Road was a private road past the Jackson Place.

¶30 In addition, Pilgeram stated that in the early 1970's, the Forest Service asked for his permission to rebuild the road and that he agreed to allow them to improve the road past the dam and around Lois Lake to access Forest Service property located north of Lois Lake. He also stated that it was never his intention, by allowing the Forest Service to improve the road, that a county road would be created or that the road remain anything other than a private road through his property.

¶31 Second, Harrison presented an affidavit from Patti L. Rowland, an attorney in Dillon, who has done extensive research of the records at the Powell County Courthouse as well as numerous other county, state and federal offices. Rowland attested to the fact that in searching the records at the Powell County Courthouse, she did not find a petition to establish a county road for that section of Snowshoe Creek Road on the Harrison property, nor did she find anything evidencing that Powell County had a right-of-way for Snowshoe Creek Road through the Harrison property.

¶32 Finally, Harrison presented an affidavit from Dennis Phillippi with Natural Resource Options, Inc., a Bozeman based natural resource consulting business. Phillippi conducted a field assessment of Snowshoe Creek and Lois Lake. As part of that assessment, he took

measurements from Snowshoe Creek Road to the high water mark of Lois Lake and determined that at each point measured, the distance to Lois Lake was greater than 30 feet from the center of Snowshoe Creek Road, thus the water level of Lois Lake would not contact any alleged county road right-of-way.

¶33 Based on this uncontroverted evidence, there are no disputed issues of fact concerning Harrison's contention that Lois Lake is situated entirely on and surrounded entirely by private property now owned by Harrison and that Ryan has to cross private property to access the waters of Lois Lake. It was undisputed that the dam creating Lois Lake was built entirely on private property, thus access via the dam requires Ryan to cross Harrison's property. Ryan's second route of access to Lois Lake via Snowshoe Creek Road north of Lois Lake results in Ryan entering property in the flood plain well outside the high-water mark. Under § 23-2-301(9), MCA, the "ordinary high-water mark" excludes the flood plain. And, finally, Ryan's access of Lois Lake off the embankment of Snowshoe Creek Road also results in Ryan crossing private property as Harrison's measurements at Ryan's admitted point of access indicate that the water level of Lois Lake would not contact any alleged county road right-of-way.

¶34 Ryan lists an additional 22 "questions of material fact" that he claims should have been adjudicated before the court could issue its summary judgment order. However, all of Ryan's "questions of material fact" are either undisputed facts, questions of law, or not material to the issue of the public's right to access Lois Lake for recreational purposes.

¶35 Accordingly, we hold that the District Court did not err in granting Harrison's motion for summary judgment based on the court's conclusion that Ryan can only obtain access to Lois Lake by crossing private property belonging to Harrison.

## Issue 3.

¶36 *Whether the District Court erred by deciding the matter without reaching the merits of Ryan's constitutional challenge.*

¶37 Ryan argued before the District Court and now on appeal that § 23-2-301(7), MCA, defining "lake" should be stricken as inconsistent with the Montana Constitution and existing case law. To that end, on January 19, 2000, Ryan sought leave of the District Court to file a Second Amended Complaint for Declaratory Relief. Ryan requested that the court grant his motion to amend so that he could add the Attorney General of the State of

Montana as a party to this action.

¶38 The District Court determined that Harrison would be prejudiced by the filing of a second amended complaint at this late stage of the litigation and that amending the complaint at this time would interfere with the revised motions and trial schedule which had already been established by the court. Hence, the court denied Ryan's motion to amend.

¶39 This Court reviews a district court's denial of a party's motion for leave to amend the pleadings to determine whether the district court abused its discretion. *Stundal v. Stundal*, 2000 MT 21, ¶ 12, 298 Mont. 141, ¶ 12, 995 P.2d 420, ¶ 12 (citations omitted). We noted in *Stundal* that while Rule 15(a), M.R.Civ.P., provides that a party may amend its pleadings by leave of court and leave shall be freely given when justice so requires, amendments to pleadings are not appropriate when the party opposing the amendment would incur substantial prejudice as a result of the amendment. *Stundal*, ¶ 12 (citations omitted). *See also Allison v. Town of Clyde Park*, 2000 MT 267, ¶ 20, 302 Mont. 55, ¶ 20, 11 P.3d 544, ¶ 20. We also noted in *Stundal* that a district court is within its discretionary authority to deny a motion to amend the pleadings if the motion would cause undue delay, was made in bad faith, was based upon a dilatory motive on the part of the movant, or was futile. *Stundal*, ¶ 12 (citations omitted).

¶40 Here, we agree with the District Court that Ryan's untimely motion would cause both substantial prejudice to Harrison and undue delay in the proceedings. Harrison objected to the motion to amend on the grounds that Harrison had raised this issue in its Answer and Counterclaim as an affirmative defense to Ryan's constitutional challenge, but that Ryan waited more than eight months before seeking leave to join the Attorney General as a party. Harrison also objected on the grounds that Harrison would be substantially prejudiced if the court allowed the complaint to be amended almost six weeks after Harrison filed its Motion for Summary Judgment.

¶41 Under § 27-8-301, MCA, and Rule 24(d), M.R.Civ.P., Ryan should have joined the Attorney General as a party to this action when he filed his complaint or shortly thereafter:

> **Necessary parties.** When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise,

such municipality shall be made a party and shall be entitled to be heard, and *if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard.*

Section 27-8-301, MCA (emphasis added).

> **Cases involving constitutional questions where the state is not a party.** When the constitutionality of any act of the Montana legislature is drawn in question in any action, suit or proceeding to which neither the state nor any agency or any officer or employee thereof, as such officer or employee, is a party, *the party raising the constitutionality of the act shall notify the Montana attorney general and the court of the constitutional issue.* The notice shall be in writing, shall specify the section of the code or chapter of the session law to be construed and *shall be given contemporaneously with the filing of the pleading or other document in which the constitutional issue is raised.* The attorney general may within 20 days thereafter intervene as provided in Rule 24(c) on behalf of the state.

Rule 24(d), M.R.Civ.P. (emphasis added).

¶42 Here, Ryan failed to timely serve the Office of the Attorney General with a copy of the proceeding or to name the State as a party to this action. Consequently, Ryan has waived his constitutional challenge by failing to comply with § 27-8-301, MCA, and Rule 24(d), M.R.Civ.P.

¶43 Accordingly, we hold that the District Court did not err in deciding this matter without reaching the merits of Ryan's constitutional challenge.

¶44 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART